CARRIE McBRIDE DILLON *et al.* v. THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY *et al.*

No. 12,871.   ( 74 Pac. 251.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Eminent Domain—Water-station.*   A railroad corporation is authorized by section 1359, General Statutes of 1901, to condemn lands separate and apart from its right of way for a water-station.

2. ——— *Owner Estopped by Accepting the Award.*   Where condemnation proceedings for condemning land for a water-station are regularly had and terminated and the owner of the fee has accepted the award, the question of the necessity for the water-station and the quantity of land required therefor are not open for future litigation.

3. ——— *Owner has no Concurrent Right of Possession.*   The owner of the fee in lands condemned by a railroad company for a water-station has no concurrent right of possession with the railroad company of that portion of such lands as are in actual use by

the company, or to any portion thereof which is necessary for its use in protecting its pond or reservoir.

4. ———— *Lease to a Club Not an Abandonment.* When a railroad company has regularly condemned a tract of land for a. water-station and caused it to be flooded with water for its use, the leasing thereof to a club for fishing, hunting, bathing, and skating, reserving to itself the actual *possession* for all purposes for which the land was condemned, with the right to cancel the lease at any time, upon thirty days' written notice, is not, as matter of law, an abandonment by said company of the land as a water-station.

Error from Johnson district court; C. A. SMART, judge *pro tem.* Opinion filed November 7, 1903. Affirmed.

*I. O. Pickering*, for plaintiffs in error.

*S. T. Seaton*, and *Pratt, Dana & Black*, for defendants in error.

The opinion of the court was delivered by

GREENE, J.: The material facts necessary to an understanding of this case are these: In 1894, while one Eugene B. McBride was the owner of the southwest quarter of section 36, township 13, range 23, in Johnson county, Kansas, the defendant railroad company instituted proceedings which resulted in the condemnation of 20.44 acres of said tract of land to be used by it in catching and storing surface water for use in operating its engines. The award was paid into the county treasury, and accepted and drawn therefrom by the owner. The defendant company went into the immediate possession of the condemned land and erected a basin, or reservoir, thereon which covered the greater portion thereof. Some time thereafter Eugene B. McBride died and the plaintiff in this action, Carrie McBride Dillon, became the owner in

fee simple by inheritance.   The other plaintiff is her husband.

The defendant company condemned and flooded other land adjoining the McBride tract, which lies on a lower elevation and is now known as Lake Chanute. The water from the basin on the McBride land is conducted to Lake Chanute by a conduit and from there conveyed directly to the company's engines.   It was alleged in plaintiffs' petition that about five acres of the McBride tract have never been flooded with water nor actually used by the defendant and are not necessary for the use of that part covered by water; that there are a number of apple trees upon the portion not flooded that have borne fruit annually; that fish are propagated in Lake Chanute and large quantities of ice form on it; all of which have been wrongfully appropriated by defendant, and for which plaintiff sought recovery.

It was alleged that the defendant company leased the McBride land and Lake Chanute to a fishing and boating club for a period of five years, and that this amounted to an abandonment by defendant; that the statute under which the condemnation proceedings were had did not authorize the condemnation by a railway company outside its right of way for water-stations, and the proceedings had thereunder were so irregular as to be void.   Plaintiffs sought to recover: (1) possession; (2) damages for overflowing the 20.44 acres so condemned; (3) damages for appropriation by the defendant of fruit grown on the land, and damages resulting from the lease to the fishing and boating club, and for the value of ice sold from Lake Chanute; (4) damages for maintaining a nuisance; (5) damages to improvements on adjoining

portions of plaintiffs' land, caused by forming the lake or basin.

The defendant pleaded condemnation proceedings by the board of county commissioners, by which it was claimed that the land had been regularly condemned to its use, the condemnation money received by the then owner of the fee, its possession thereunder, and the building and present use of the reservoir.

After the trial had progressed so far as to inform the court of the nature of the questions involved, it refused to hear any evidence upon any of the issues tendered by the petition, except such as related to the rental value of the land included in the 20.44-acre tract not in actual use by the defendant company, and not necessary for the maintenance of its basin, or reservoir, and the value of the fruit grown thereon and appropriated by the defendant company. Upon the issues thus defined by the court the cause was tried. The jury returned special findings and a general verdict for the plaintiffs for ninety-five dollars, for which amount judgment was rendered. Plaintiffs prosecute this proceeding and allege error in the rulings above indicated.

The first contention is that the statute under which the condemnation proceedings were had did not authorize the railroad company to condemn a large tract of land, separate and apart from its right of way, for a water-station. These proceedings were had under section 1359, General Statutes of 1901, which reads :

"Any duly chartered and organized railway corporation may apply to the board of county commissioners of any county through which such corporation proposes to construct its road, to lay off, along the line of such proposed railroad, as located by such company, a route for such proposed railroad, not exceeding one hundred feet in width, except for the

purpose of cuttings and embankments it shall be necessary to take more for the proper construction and security of the road, through as much of said county as may be desired by such company; and also such land as may be deemed necessary for side-tracks, depots and workshops, and water-stations. . . ."

We do not find this precise question previously determined by this court. The language of the section above quoted, however, fully authorizes railway companies to cause lands to be condemned for water-stations separate and apart from its right of way. It provides: (1) For the condemnation of a quantity of land for a right of way not exceeding one hundred feet in width; (2) in addition thereto, other lands where it shall be necessary to take more for the purpose of cuttings and embankments for construction and grade of the road; (3) such other lands as may be deemed necessary for side-tracks, depots, workshops, and water-stations.

The irregularities complained of are that the commissioners failed to embody in their report that the land so condemned was necessary for a proper construction of the road and that they had ascertained carefully the quantity of land necessary for such purpose. These omissions were at most irregularities which might have been corrected in the condemnation proceedings if suggested, and do not render the proceedings void.

It is admitted that Eugene B. McBride collected from the county treasurer the condemnation money; therefore, he could not be heard to say that the proceedings were irregular or void, and plaintiffs, who claim the land by inheritance from McBride, are in no better situation to question the proceedings than McBride. (*Parsons Water Co. v. Knapp*, 33 Kan. 752,

7 Pac. 568 ; *C. B. U. P. Rld. Co. v. Andrews*, 26 id. 702, 711 ; *Challiss v. A. T. & Santa Fe Rld. Co.*, 16 id. 117.)

Plaintiffs undertook to show that at the time of the condemnation proceedings the defendant had another pond near its station which furnished an adequate and permanent supply of water for all its uses. This evidence was properly rejected by the court. The necessity for this additional pond and the amount of land to be used for such purpose were determined and finally concluded in the condemnation proceedings, and were not thereafter questions for future litigation.

It is contended that the court erred in holding that plaintiffs were not entitled to the concurrent occupancy of that portion of the land flooded with water for the purpose of fishing and hunting, nor to the use of the water stored thereon, or ice formed on Lake Chanute. Upon all these questions we think the ruling of the court correct. As the land in question was condemned and the easement paid for by the defendant company, it is entitled to the exclusive control of every part thereof actually used by it for the purpose of catching and storing water, and also all other portions not flooded with water, but the occupancy of which is necessary for the protection of the pond and the conservation of the water.

Railroad companies are public carriers and are properly held to the highest accountability in the performance of their duties. It is highly important to the general traveling public, as well as to business interests, that such corporations have exclusive possession and uninterrupted control of all property the use of which is necessary in the discharge of this service. If the principle of concurrent occupation of property used by such corporations in carrying on their regular traffic should obtain, the expeditious and safe perform-

ance of their duties would be difficult, if not possible. (*K. C. Rly. Co. v. Allen,* 22 Kan. 285, 31 Am. Rep. 190; *Mo. Pac. Rly. Co. v. Manson,* 31 id. 337, 2 Pac. 800; *K. C. Rld. Co. v. Comm'rs of Jackson Co.,* 45 id. 716, 26 Pac. 394.) There can be no concurrent occupancy of railroad property in actual use by it in the operation of its business without its consent.

The fact that the defendant company leased this lake to a fishing and boating club is made much of in the argument. It is earnestly contended that this amounted to an abandonment, and thereupon the right of possession revested in the owner of the fee. The very reverse of this contention appears from the lease, a portion of which reads:

"It being understood that the lessor entirely reserves to itself the sole right to use the water and ice from said pond and to direct any changes which it may deem advisable or necessary in the surface of the ground of the leased premises or the banks of the ponds, or the dam or any other portion of said tracts of land; this lease being intended only to grant to said lessee the right to control said land and ponds for hunting, boating, fishing, bathing and skating purposes, and to prevent any one from interfering therewith, except as herein otherwise limited."

"It is further agreed, that if this grant or anything done thereunder proves, in the judgment of the general manager of said lessor to be detrimental to the interests of the latter, or if he deems it necessary for its interests that he should have the sole and exclusive control of the leased premises in order to carry out the purposes for which said land was purchased by the lessor, or if the latter shall wish to sell the same, or if said lessee should fail in any respect to comply with the covenants and agreements hereinbefore set forth on their part to be kept and performed, then, in either of such events, this lease may be terminated by said manager, giving to said lessee thirty (30) days' written notice."

It will be observed, notwithstanding the lease says it is a grant for five years, that at most it is only a license, subject to be terminated at the option of the general manager of the defendant upon giving thirty days' written notice. It is too plain for argument that it was not the intention of the defendant to abandon this property.

Error is predicated upon the refusal of the judge to instruct the jury in writing. Subdivision 5 of section 4722, General Statutes of 1901, contains this provision :

"The court shall give general instructions to the jury, which shall be in writing, and be numbered, and signed by the judge, if required by either party."

The record does not show that either party requested the court to give the general instructions in writing. Without such request having been made it was not error for the court to instruct orally.

The judgment is affirmed.

All the Justices concurring.