No. 40,870

O. A. SUTTON, *Appellant*, v. RAY FRAZIER, JOSEPH E. NEWMAN, FRANK CONNER and DURL T. SPANGLER, *Appellees*.

(325 P. 2d 338)

34

Opinion filed May 10, 1958.

*Paul R. Kitch,* of Wichita, argued the cause, and *Homer V. Gooing, Wayne Coulson, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Theodore C. Geisert* and *Philip Kassebaum,* all of Wichita, were with him on the briefs for appellant.

*Arthur W. Skaer,* of Wichita, argued the cause, and *W. Getto McDonald, William Tinker, Hugh P. Quinn, William Porter, John E. Lancelot* and *Alvin D. Herrington,* all of Wichita, were with him on the briefs for appellee, Joseph E. Newman.

*George B. Collins, Oliver H. Hughes, Robert Martin, K. W. Pringle, Jr., W. F. Schell* and *Thomas M. Burns,* all of Wichita, were on the briefs for appellee, Durl T. Spangler.

*Lester L. Morris, Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock* and *J. Edward Taylor, Jr.* all of Wichita, for Sunflower Improvement District, as *amici curiae.*

The opinion of the court was delivered by

SCHROEDER, J.: The question presented on this appeal is whether an improvement district empowered to condemn private property by G. S. 1949, 19-2765, for its lawful corporate purposes acquires the fee simple title to the land condemned, including the minerals underlying such land, in proceedings conducted pursuant to the provisions of G. S. 1949, 26-101.

Appellant, O. A. Sutton, the plaintiff below, holds oil and gas leases executed by the owners of several adjacent tracts of land subject to the rights of the Sunflower Improvement District. Appellee, Joseph E. Newman, holds an oil and gas lease executed by the condemning authority, Sunflower Improvement District, and covering a part of the same tracts upon which Sutton claims leases.

Sutton appeals from a decree dissolving his restraining order and denying his request for injunctive relief against Newman, and his oil well drillers, Frazier and Conner, appellees, from continuing the drilling of a test well for oil and gas upon the premises condemned.

The case was heard by the trial court upon an agreed statement of facts, the material facts being as follows: In September, 1951, the Sunflower Improvement District, a municipal corporation, hereafter called Sunflower, filed in the district court of Sedgwick County a petition seeking the appointment of commissioners to assess the value of land to be taken and to assess damages. The petition alleged that the taking was necessary ". . . for the purpose of constructing and operating a sewage disposal plant and to provide means of ingress and egress to and from the same and to provide a right-of-way for a sewer main or sewer mains to and from said plant." The petition alleged "That it is necessary to take said lands described above in fee for public purposes." Condemnation proceedings were conducted pursuant to G. S. 1949, 26-101. The district court found in its order appointing commissioners that all statements contained in the petition were true; that Sunflower had power to take private property for public use by exercise of the right of eminent domain; and that it was necessary for Sunflower to acquire by condemnation certain lands for the exercise of its lawful corporate purposes, which were specifically described as set forth in the petition. After notice and hearing the commissioners filed their report. Their report described three tracts of land as set forth

in the petition and opposite the description the commissioners set out the several awards in the total sum of $3,144.50. The commissioners' notice of hearing stated the purpose of the taking as in the petition, but did not make any statement as to the estate to be taken. The report of the commissioners did not state the purpose of the taking but recited that the owners of the property taken were awarded the sums of money set forth "as damages for the lands taken, which damages include the value of the lands taken and other damages done to the owners, . . ."

The property consisted of three tracts, two in the center of the Northwest Quarter of Section 32, Township 28 South, Range 1 East, consisting of approximately two acres. One tract is on the south half of the quarter section and the other on the north half, there being two condemnees. The third tract is a strip 20 feet wide running from the two tracts along the north side of the east-west dividing line between the two eighties to the east line of the quarter.

Sunflower then filed a petition for confirmation of the report of the commissioners following which the district court confirmed and approved the actions taken in the condemnation proceeding, after having specifically found that no notice of the hearing for confirmation was necessary to the landowners. The order further recited that title and right to possession of the described lands ". . . have vested and are hereby confirmed in the Sunflower Improvement District, . . ." and further ordered that the county clerk of Sedgwick County, Kansas, remove the ". . . described lands taken in eminent domain from the tax rolls and to note therein that said land is owned by the Sunflower Improvement District, . . ." and used for public use.

More than three years after Sunflower took possession of the condemned land, oil was discovered in the vicinity of said Northwest Quarter. Thereafter, Sutton acquired an oil and gas lease from Marshall covering Marshall's land in the South Half of said Northwest Quarter. Sunflower excuted an oil and gas lease to Spangler covering the land condemned in said Northwest Quarter, and Spangler assigned the lease to the appellee, Joseph E. Newman, and his brother, L. B. Newman. Thereafter, Sutton obtained an oil and gas lease from Fager. Sutton's leases from both Fager and Marshall recited that they were executed subject to the rights of Sunflower.

At the time suit was filed Sutton (appellant) had drilled wells adjacent to, but not on the tract condemned, and the appellees were drilling on the Sunflower tract.

The parties stipulated that the court should determine who had title to the minerals underlying the condemned tract and should refuse or grant the injunction depending upon whether or not title to the minerals was or was not in Sunflower.

The pertinent findings of the trial court are set forth in the journal entry as follows:

"2. In its petition filed in said proceedings the Sunflower Improvement District asked for a fee simple title as being necessary for its undertaking; the court found such necessity as existing and the proceedings to condemn was thereafter duly undertaken in compliance with said statute. All of the necessary parties were before the court in said condemnation proceedings and accepted the awards granted unto them for said taking; the court thereafter decreed title to said tracts as vested in the Sunflower Improvement District and ordered said lands removed from the tax rolls of Sedgwick County, Kansas. Said awards were never appealed nor have the former land owners ever petitioned to reopen said judgment and decree therein rendered.

"3. The fee simple absolute title to said tracts of land above described vested in the Sunflower Improvement District, a corporation of Sedgwick County, Kansas, in the year 1951, and several years prior to the execution of any of the oil and gas leases herein involved. The term 'fee simple absolute title' means all right, title, and interest and includes the minerals in place."

The validity of the respective leases was decreed by the court in accordance therewith, the restraining order entered prior thereto was dissolved and injunctive relief denied. The leases of Sutton insofar as they attempted to cover the tracts involved in the condemnation proceedings were declared void.

This case crystalizes with full impact the character of an eminent domain proceeding under Kansas law.

An eminent domain proceeding is a special statutory proceeding and is not a civil action covered by the code of civil procedure. The proceeding is administrative rather than judicial, and its nature is the same whether conducted by or before a district court, or any judge thereof, the probate court, or its judge, a board of county commissioners or any other official board or tribunal authorized by the legislature to act in that capacity. The amount to be paid is determined by commissioners or appraisers and not by the board or tribunal appointing them or with whom they filed their report. The report of the amount found due is an award and is not a judgment. Prior to an appeal from the award the proceeding is in the nature of an inquest.

The eminent domain proceeding does not provide a forum for litigation of the right to exercise the power of eminent domain nor the extent thereof. Upon appeal to the district court from an award

the sole issue is the amount of compensation due and no contest of the condemner's right to exercise the power of eminent domain is permitted. The condemnees may and must litigate the condemner's right to the exercise of the power of eminent domain in an individual civil action, usually by suit for injunction. (*State Highway Commission v. Griffin*, 132 Kan. 153, 294 Pac. 872; *Glover v. State Highway Comm.*, 147 Kan. 279, 77 P. 2d 189; *State v. Boicourt Hunting Ass'n*, 177 Kan. 637, 282 P. 2d 395; *Board of Education of the City of Nickerson v. Gum*, 178 Kan. 397, 285 P. 2d 780; and *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 318 P. 2d 1000.)

Under the positive and express language of the cited cases, and many others collected in them, the condemnees (appellant's lessors) had no right whatever to litigate in the eminent domain proceeding the extent of the power of eminent domain conferred upon Sunflower by the legislature. The eminent domain proceeding, therefore, did not afford condemnees an opportunity to litigate the condemner's right to condemn oil and gas in place.

The procedural statute, G. S. 1949, 26-101, (*Strain v. Cities Service Gas Co.*, 148 Kan. 393, 83 P. 2d 124) provides that the appraisers shall file their report with the clerk of the district court, that if the condemning authority desires to acquire the land at the appraised price it ". . . shall within thirty days deposit with the clerk of the district court the total amount of such appraisement, shall pay the court's costs . . . and the title to all such lots and parcels of ground *thereupon* shall *immediately* vest in the said petitioner, . . ." (Emphasis added.)

The statute makes no provision for an order of confirmation by the judge, the court or anyone else, and the so-called "Order of Confirmation" neither added to nor detracted from whatever title was acquired by the filing of the commissioners' report and the payment of the appraised value.

Appellees, in addition to foreign cases, rely upon two cases that state the condemnation proceeding is *res judicata* of the right to condemn and of the necessity for the taking. (*Dillon v. Railroad Co.*, 67 Kan. 687, 74 Pac. 251; and *State, ex rel., v. State Highway Comm.*, 163 Kan. 187, 182 P. 2d 127.) In the *Dillon* case without relying upon any authority this court said:

". . . The necessity for this additional pond and the amount of land to be used for such purpose were determined and finally concluded in the condemnation proceedings, and were not thereafter questions for future litigation." (p. 692.)

Without recognizing any decisions, or the *Dillon* case, this court said in the *State Highway Commission* case:

". . . In this action we cannot determine what quantum of land was necessary. The district court was obliged to determine that fact in the condemnation proceedings. (G. S. 1935, 26-101.) That fact has been adjudicated. No appeal was taken from that decision and it is now a finality. . . ." (p. 196.)

Inasmuch as the foregoing language, and similar statements in the two opinions from which such language is taken, is contrary to the decisions heretofore cited, which are the controlling law in Kansas, such language is hereby disapproved.

Appellees rely upon certain language in the petition for the appointment of commissioners—that it was necessary to take the lands described in fee for public purposes—and in the order appointing the commissioners, which found the allegations of the petition to be true, and other language in the condemnation proceedings which referred to the property described as "land" (citing G. S. 1949, 77-201, *Eighth*) contending that such language clearly indicates that the proceeding was instituted and carried through for the purpose of condemning the fee simple estate in the land. (Citing, *Coleman v. Shoemaker*, 147 Kan. 689, 693, 78 P. 2d 905; which quotes 1 Tiffany on Real Property, 2d ed., p. 44.) Unless the statutes authorize the taking of the fee simple estate in such proceeding, it is clear that no language in the record of such proceeding could enlarge or extend the authority of Sunflower beyond the limits prescribed by law. There was no judicial determination that the fee simple estate in the land was condemned because nothing was before the court in that proceeding which empowered the court to make a judicial determination of any issue of law or fact. It was not until Sunflower leased the condemned tracts that the condemnees or Sutton could possibly have been apprised of the fact that Sunflower claimed the minerals in place. (See, *French v. Ayres*, 201 Okla. 494, 207 P. 2d 308.)

Did applicable statutes authorize Sunflower to condemn minerals in place?

It is fundamental that no person can be divested of his land, or any part or portion thereof, or any interest therein, through the exercise of the power of eminent domain except under the provisions of express and positive constitutional or statutory law, and that he cannot be divested through the exercise of such power of any more or greater interest in his land than the constitution or

statutes expressly provide. (*Comm'rs of Shawnee Co. v. Beckwith,* 10 Kan. 603.) The power of eminent domain is inherent in a state. It is not granted by our Kansas constitution, but its exercise may be limited by the constitution. (*Glover v. State Highway Comm.,* supra.) The power of eminent domain can only be exercised by virtue of legislative enactment. (*Strain v. Cities Service Gas Co.,* supra.)

G. S. 1949, 26-101, outlines the procedure for the condemnation of land by a corporation having the right of eminent domain. It *contains no grant of power.* Normally, statutes granting the right of eminent domain should never be enlarged by implication. (*Strain v. Cities Service Gas Co.,* supra.)

The right of eminent domain in an improvement district, such as Sunflower, is conferred by G. S. 1949, 19-2765. This is the *empowering* statute in the instant case which authorized Sunflower to proceed in condemnation pursuant to the provisions of G. S. 1949, 26-101, which is the *procedural* statute. The pertinent portion of 19-2765, *supra,* provides:

"That every improvement district incorporated under the terms of this act shall have the power:

. . . . . . . . . . . . .

"*Third,* to plan and construct public works and improvements necessary for public health, convenience or welfare within the limits of the improvement district. Also to construct works outside the limits of the district which may be necessary to secure outlets, disposal, etc., and permit satisfactory performance of the works within the district.

. . . . . . . . . . . . .

"*Fifth,* to take private property for public use by exercise of the right of eminent domain as provided by law."

The power to exercise the right of eminent domain "as provided by law" refers the condemner to the general condemnation statute, 26-101, *supra,* for the procedure in condemnation. This procedure applies to all corporations having the power of eminent domain, except railroads and cities. The code of civil procedure does not affect proceedings to assess damages for private property taken for public uses. (G. S. 1949, 60-3823; *Glover v. State Highway Comm.,* supra; and *State v. Boicourt Hunting Ass'n,* supra.)

Whether Sunflower had the right to condemn the land and take title in fee simple, including the minerals in place, must be ascertained from the empowering statute (19-2765, *supra*).

It must be noted that we are not concerned in this case with the

special power conferred upon a public or quasi public corporation to purchase, hold, sell and convey real estate and other property. Under such special power it may purchase the real property in fee simple by warranty deed, including all interests therein, and convey the same in like manner. This merely authorizes acquisition of property without resort to condemnation where it is possible to agree with the owner upon the price. But such special power confers no privilege upon a public or quasi public corporation to take the fee title, including all interests therein, *against the will* of the owner *by the exercise of its power of eminent domain.*

The general rule is that eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly so provides, either expressly or by necessary implication. And the legislature has full power to determine the nature of the title to be acquired by the condemner, since the constitution of this state places no limitation or restriction on the nature of the title to lands which may be acquired by the process of eminent domain. (*State, ex rel., v. State Highway Comm.,* supra.)

Application of the foregoing rule of construction in *State, ex rel., v. State Highway Comm.,* supra, led this court to hold in construing G. S. 1945 Supp., 68-413, a special state highway commission condemnation statute, that the commission acquired a fee title to all land condemned as necessary for the purposes specified in the statute. This court there said of the *empowering* statute:

"No other condemnation statute in this state contains such broad and sweeping terms. It is observed the statute provides the commission may acquire title to *any* lands, or interest or rights therein, etc. It likewise provides the commission may dispose of *any* real estate, or *any* right, or *any* title, or *any* degree, or *any* variety of interest therein. That means the commission may sell, assign or convey in any manner the whole interest in the land acquired or any portion thereof less than the whole title. How could it do so if it possessed only an easement? It seems to us wholly illogical to assume the legislature authorized the commission to sell something to which it never acquired title. Furthermore, the proviso, the concluding sentence of the statute, expressly negatives the ordinary theory of reverter of title to the landowner. It clearly provides that if the road is vacated the 'lands or interests or rights therein acquired . . . for right of way' revert '*unless disposed of as above provided. . . .*' (Emphasis supplied.)

"It is, of course, true that where language of a statute will bear the construction that only an easement was intended courts as a general rule seem disposed to leave the fee in the landowner. (18 Am. Jur., Eminent Domain,

§ 114.) We think the instant statute does not permit the latter construction. . . .

". . . *We are not now dealing with the question of what title some other condemnor might acquire when proceeding solely under the provisions of the general condemnation statute, G. S. 1935, 26-101, and express no opinion thereon.*" (pp. 197, 198.) (Emphasis added.)

The foregoing case was decided in 1947. (See, G. S. 1957 Supp., 68-413 and 413a, enacted by the legislature in 1951.)

In *Skelly Oil Co. v. Kelly,* 134 Kan. 176, 5 P. 2d 823, the City of Atchison condemned land for a park by virtue of regular condemnation proceedings under Article 2, Chapter 26, Revised Statutes of 1923 (now G. S. 1949, 26-201 to 26-210). The city took possession, but did not use the land for a park, and afterwards sold the land for a sum greatly in excess of the award given the previous landowner to a purchaser who erected a filling station. In a quiet title action by the purchaser against the former owner it was held that the city had fee simple title. There the condemnation proceedings were conducted under the special statutes applicable to cities where the provisions empowered the city to condemn and likewise provided a special procedure. The pertinent portion of R. S. 1923, 26-204, specifically provided: ". . . The title to lands condemned by any city for parks, parkways or boulevards shall vest in such city upon the publication of the resolution of the governing body condemning the same . . ." Under the circumstances, *the legislature having deemed it important to insert a special provision as related,* the court there construed the word "title" to indicate ". . . ownership, and unquestionably the usual and ordinary signification of the word when used above in the sense of ownership is ownership in fee." (p. 179.) The vesting of title under the statute was unqualified.

Appellees contend that by reason of the two cases last discussed, Sunflower acquired the fee simple title to the land condemned in the instant case. We do not agree. These authorities compel a decision to the contrary. Nowhere in the empowering statute (19-2765, *supra*) has the legislature clearly provided, either expressly or by necessary implication, that an improvement district in the exercise of its power of eminent domain acquires title to real property in fee simple absolute. The statute is silent as to how much land, or what interest therein, shall pass to the improvement district, and how much of the land, or what interest therein, shall re-

main with the original proprietor. Therefore, it must be inferred that the legislature did not intend to confer upon an improvement district the power to acquire title to any greater interest in land condemned than was necessary to make the public improvement project, in this case a sewage disposal plant, a good and sufficient operating plant for the public. It follows, in the instant case, Sunflower did not acquire title to the minerals in place by the condemnation proceedings.

The extent to which Sunflower acquired rights or title to the surface of the land condemned is not a question presently before the court. The only question here is whether Sunflower acquired title to the minerals in place.

Under the procedural statute (26-101, *supra*) Sunflower acquired title to only that interest in the real property condemned which it was empowered to take under 19-2765, supra. These statutes are thus in harmony.

The legislature is capable of speaking with clarity when it intends that the condemning authority shall acquire the fee simple title to real property taken under the power of eminent domain. (See, Laws of 1864, Ch. 124, § 4, repealed; G. S. 1957 Supp., 13-1388; G. S. 1957 Supp., 17-4749; and G. S. 1957 Supp., 68-413 and 413a.)

Appellees by a circuitous process of reasoning with statutory construction contend that Sunflower acquired the fee simple title to the real property condemned. It is urged that the term "property" in 19-2765, *supra,* shall be construed to include "personal and real property" by virtue of G. S. 1949, 77-201, *Tenth;* and that "real property" includes ". . . lands, tenements and hereditaments and all rights thereto and interest therein, equitable as well as legal." by virtue of G. S. 1949, 77-201, *Eighth;* and as a result thereof the legislature was in effect stating in 19-2765, *supra,* that Sunflower could ". . . take private personal property and private real property for public use by exercise of the right of eminent domain as provided by law, and that real property included lands and all rights thereto and interest therein." This entertaining maneuver, which appellees call statutory construction, is nothing short of pyramiding to sanction judicial legislation—it amends 19-2765, *supra,* from the right to take private "property" to read "real property, all rights thereto and interests therein."

The statute, G. S. 1949, 19-2765, should be read in its entirety. Subdivision *Tenth* gives improvement districts power "to make all

contracts and do all other acts in relation to the affairs of the district necessary to the proper exercise of its corporate legislative or administrative powers and to the accomplishment of the purpose of its organization." When subdivision *Fifth* is put into context the necessary meaning of "to take private property for public use . . ." includes to the extent necessary for its corporate purposes.

Appellees cite G. S. 1957 Supp., 55-211a and 55-211b which authorize oil and gas leases by municipal corporations, including improvement districts, owning or having the management and control of any tract of land within the State of Kansas. These are enabling statutes where the municipal corporation has title to the minerals in place, and they confer no power in the acquisition of title to such interests in land. They confer no power to lease lands in which the minerals are not owned by the municipality. G. S. 1949, 19-2765, was enacted in 1945 and G. S. 1957 Supp., 55-211a and 55-211b, were first enacted in 1949 four years after the improvement district law. The rule of statutory construction that statutes in *pari materia* are to be compared with each other and construed together is only applicable in the construction of statutes relating to the same subject. ( *State, ex rel., v. City of Walnut*, 165 Kan. 205, 193 P. 2d 172, Syl. 2. )

One other point merits attention. Is the appellant Sutton estopped herein? If the condemnees, appellant's lessors, have been estopped, then appellant is similarly estopped since an estoppel operates on the parties to the transaction out of which it arises and their privies. ( 19 Am. Jur., Estoppel, § 152, p. 809. )

It is argued by appellees that in 1951 Sunflower asked for a fee title in the petition for condemnation; that the court found such a taking necessary and ordered title and possession vested in Sunflower; that Marshall and Fager, who were before the court acquiesced therein and accepted the benefits of their awards for such taking, did not appeal therefrom, nor have they or their successors in title attacked the proceedings in nearly seven years last past; and that Marshall and Fager and their successors are estopped. Appellees' position is founded upon the premise that Sunflower's request for fee title is now an adjudicated fact. If appellees here rely on *res judicata*, it is synonymous with estoppel by judgment. ( *Woods v. Duval*, 151 Kan. 472, 99 P. 2d 804. ) Appellees rely on cases dealing with acquiescence in the judgment. ( *In re Estate of Hill*, 179 Kan. 536, 297 P. 2d 151; *Peters v. Peters*, 175 Kan. 422,

263 P. 2d 1019; and *Patterson v. Patterson,* 164 Kan. 501, 190 P. 2d 887.) This question has been answered. The proceedings in condemnation were administrative and the court had no power to *adjudicate* anything. (See, *Lynch v. Chase,* 55 Kan. 367, 40 Pac. 666.) In the instant case the landowners did not appeal. There was never an action pending before the district court relative to the condemnation. The "Order of Confirmation" was not entered in a civil action and it was not a judgment. There was never a judgment entered by reason of the condemnation, aside from the injunction action contesting the rights of the parties herein.

It is asserted by appellees that even in the case of an administrative proceeding, a defense of estoppel can arise when the parties concerned acquiesce in the findings and accept the benefits therefrom. The answer alleged, and appellees argue, that the landowners acquiesced in the condemnation proceedings and accepted all benefits accruing to them therefrom. Such benefits, it is argued, were the values placed on said lands for the taking of the fee title.

The procedural statute, G. S. 1949, 26-101, does not provide for notice of the filing of the petition in condemnation and the landowners received none. The only notice the landowners received resulted from the required publication of notice of the appraisers' hearing. Neither that notice nor the appraisers' award said anything about an attempt to acquire any interest in the minerals or any title in fee simple.

The landowners under these circumstances cannot be estopped from asserting ownership to the minerals in place by reason of their acceptance of the award. Pursuant to the empowering statute Sunflower took the land definitely described in the report of appraisers for the uses specified in the notice. The report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment. The landowners may rely implicitly on the report filed. This report becomes the evidence and the only evidence of the commissioners' doings. (*Mercantile Co. v. O. H. & G. Rld. Co.,* 56 Kan. 174, 42 Pac. 712; *State v. Armell,* 8 Kan. 288; and *C. K. & W. Rld. Co. v. Grovier,* 41 Kan. 685, 21 Pac. 779.) There is nothing in the description of the land taken in the instant case which would lead anyone to suspect that oil and gas in place were taken, particularly when the report was required to state fully and precisely the extent of the appropriation. (*C. K. & W. Rld. Co. v. Grovier,* supra.)

Appellees further argue, that if the landowners claimed title to

the minerals, they have not evidenced same for nearly seven years by paying taxes thereon, since they allowed the surface and minerals to be removed from the tax rolls as belonging to Sunflower. On this point the record fails appellees. It is silent as to whether the property was removed from the tax rolls and whether the landowners did or did not pay taxes on the minerals in place underlying the condemned land. The point merits no further comment as defensive matter to the petition for injunctive relief. Whether failure to pay taxes on the mineral interest would or would not estop the landowners we do not here or now decide.

From 1951 until 1957 there was no interference by Sunflower with the landowners' mineral interest in the tracts of land condemned. Then for the first time on January 16, 1957, the improvement district and its lessees undertook to appropriate the minerals by leasing the condemned tracts of land for oil and gas. Then and only then did the necessity for litigation of the question of title to the minerals arise. In *French v. Ayres,* supra, the condemnee was permitted to contest the condemner's claim to a fee title more than thirty years after the condemnee had drawn down the amount of the award.

The trial court's determination that the eminent domain proceeding vested the improvement district with title to the minerals underlying the condemned tracts is erroneous and the judgment should be and hereby is reversed with directions to issue the injunction.

It is so ordered.

WERTZ and ROBB, JJ., dissent.