No. 47,350

McCALL SERVICE STATIONS, INC., *Appellee,* v. CITY OF OVERLAND PARK, KANSAS, a Municipal Corporation, *Appellant.*

(524 P. 2d 1165)

Opinion filed July 17, 1974.

*Marvin E. Rainey,* of Rainey and Wiglesworth, of Overland Park, argued the cause, and *James T. Wiglesworth,* of the same firm was with him on the brief for the appellant.

*John J. Ziegelmeyer,* of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the landowner in an eminent domain proceeding, initiated by the City of Overland Park, from the award of the court appointed appraisers.

On the 29th day of October, 1971, the City of Overland Park (defendant-appellant), filed a petition in eminent domain pursuant to K. S. A. 26-201, *et seq.,* to acquire real property for the improvement of the intersection of 63rd Street (U. S. Highway 50) and Foster Street. McCall Service Stations, Inc. (plaintiff-appellee) was the owner of the property on the northeast corner of the intersection with 190 feet of frontage on U. S. Highway 50 and 155 feet of frontage on Foster Street. The city acquired a permanent street right-of-way of approximately 1,500 square feet, consisting of a ten foot strip along Foster Street, and a construction easement containing 4,580 square feet, which was a strip of varying width along all of the Foster Street frontage and along the west 130 feet of the U. S. Highway 50 frontage. No additional street right-of-way was acquired along U. S. Highway 50.

The court appointed appraisers filed their report on the 6th day of December, 1971, awarding to the landowners the sum of $15,030. The city paid that sum to the clerk of the district court and acquired the described real estate on the 17th day of December, 1971. The landowner perfected a timely appeal therefrom.

The matter came regularly on for a pretrial hearing on October 17, 1972, and for trial on October 17th, 18th and 19th, 1972.

At the time of trial construction of the intersection improvement had commenced and was nearly completed. Included in the construction was the installation of a raised curbed medial strip in the center of U. S. Highway 50 east of the Foster Street intersection, the widening and/or realignment of U. S. Highway 50 and Foster Street

and the construction of curbs along a part of the north side of U. S. Highway 50 and the east side of Foster Street on the street right-of-way in front of the McCall Service Station.

The curbs had been constructed in such a way as to regulate ingress and egress to the McCall property from U. S. Highway 50. Prior to the improvement there was a grass area or island directly in front of the station between the east and west driveways on the public right-of-way. This island between the highway and the McCall property was enlarged by extending it to the west, still on public right-of-way, so as to block off the west drive onto 50 Highway and require vehicles to enter or leave the station on Foster Street. No easements were taken in the area of the east driveway from which entrance could be made from Highway 50 to the McCall property—it remained unchanged as did the driveway onto Foster Street.

At the pretrial conference the court determined the improvement made by the taking of property in the condemnation action had the effect of taking access previously enjoyed by the landowners on 63rd Street, or U. S. Highway 50; that the loss of access was a compensable factor to be considered by the jury, but that the city should be allowed to show in diminution of the landowner's contention that their access had been abolished, except as to the one driveway; that people could get in and out of the property on Foster Street.

The trial court further determined at the pretrial conference, as a matter of law, that the temporary construction easement upon the McCall property must be considered a permanent taking, because there was no ascertainable date as to when the construction would cease. No objection was made by the city to this ruling. Furthermore, there was no objection to the court's instruction which described this particular easement as a "permanent construction easement". No complaint is made of this ruling on appeal to this court. The ruling of the trial court on this point therefore becomes the law of the case.

At the pretrial conference the court stated the access to the remaining land may be considered in arriving at just compensation in the case, not as a separate item of damage, but it may be considered along with all the other factors in determining total compensation and damages; that the measure of damages for the taking of the access was the difference between the market value before the taking and the market value after the taking.

The McCalls purchased the service station cite in question on August 31, 1971, and paid $250,000 for it. This condemnation proceeding was filed 60 days thereafter.

All witnesses for the landowner and all witnesses for the city, except one, placed the value of the property prior to the taking at $250,000. The landowner's witnesses placed the value of the property after the taking in a range from $100,000 to $125,000. The major factor considered by the landowner's witnesses in valuing the property after the taking was the loss of access resulting from the elimination of the west driveway on U. S. Highway 50. Two expert witnesses for the city placed the value of the property after the taking in a range from $234,970 to $238,000.

Jack Forbes, an expert witness for the city, placed the before value at $224,150 and the after value at $211,100.

The damages for the taking determined by the landowner's witnesses therefore ranged from $150,000 down to $125,000; while the damages placed by the city's expert witnesses ranged from $15,030 down to $12,000.

The jury after being instructed on the matter returned a verdict which valued the subject property prior to the taking at $250,000 and after the taking at $190,000, thereby allowing the landowner $60,000 damages for the taking.

It is from this award of damages that the city has perfected its appeal.

The primary contention of the appellant on appeal is that the trial court erred in ruling the city acquired access rights to the landowner's property.

The appellant argues that no access rights were taken by condemnation, since neither the petition nor the appraisers' report described any access as being taken. It is contended that parol evidence should not have been admitted to show that the effect of the improvement amounted to a taking in the nature of inverse condemnation.

Relying upon *Sutton v. Frazier*, 183 Kan. 33, 325 P. 2d 338, the appellant argues that the property acquired by the city was not a fee but an easement for street purposes. The appellant asserts that neither the petition nor the appraisers' report described any access rights, and therefore if the landowner had any rights of access to U. S. Highway 50 or Foster Street prior to the taking, he had those same rights after the taking.

The appellant relies upon *Sutton v. Frazier*, supra, and *Roberts v. Upper Verdigris Watershed*, 193 Kan. 151, 392 P. 2d 914 for the proposition that in the eminent domain proceeding the report of the appraisers must show what is taken, and what the landowner parts with. Nothing is taken by implication or intendment and the landowners may rely implicitly on the report filed which becomes the evidence and the only evidence of the commissioners' doings.

It is argued parol evidence is inadmissible on trial of a condemnation appeal to show that anything additional has been taken (citing, *Roberts v. Upper Verdigris Watershed*, supra).

We think the appellant presses the construction of *Sutton v. Frazier*, supra, too far. The value of a service station is dependent almost entirely upon the access the traveling public has to the service station. Where, as here, the taking of property in an eminent domain proceeding surrounds a service station it affects access to the service station. Under these circumstances the effect of the taking upon the access of the traveling public to the service station may be taken into consideration in determining the before and after value.

In the instant case we are concerned with *condemnation proceedings conducted pursuant to K. S. A. 26-201, et seq.*, and not the establishment of controlled access facilities pursuant to K. S. A. 68-1901, *et seq.* The appellant seeks to associate this case with *Brock v. State Highway Commission*, 195 Kan. 361, 404 P. 2d 934, which overruled *Franks v. State Highway Commission*, 182 Kan. 131, 319 P. 2d 535, and *Atkinson v. State Highway Commission*, 184 Kan. 658, 339 P. 2d 334.

Brock, however, acknowledges the difference in the two proceedings where the court said:

"Without entering into an extended discussion as to what does or does not constitute undue interference with access rights on a conventional or land-service highway we are forced to conclude that the doctrine granting a right of access to abutting landowners as developed for conventional or land-service highways does not have the same application to controlled access highways." (p. 369.)

The trial court in the instant case made the same observation when it determined the matters upon which it ruled at the pretrial conference. In the instant case the landowner is not concerned with the rights of access on Foster Street because they were not disturbed. The access to the service station that was disturbed was the west access entrance on U. S. Highway 50. This entrance access

was taken by the improvement, and the landowner did not have the same right of access to U. S. Highway 50 after the taking as he did before the taking. The trial court ruled as a matter of law that the taking by the city in this case, evidenced by the making of the improvement, by necessary implication took the right of access to the landowner's property, and that such taking was compensable. There is no dispute that the access was taken in this case, the appellant simply takes the position that it does not have to pay for it.

It should be clearly understood in *Brock, Franks,* and *Atkinson* the court was not confronted with eminent domain proceedings. In both *Franks* and *Atkinson,* the action was initially filed as an injunction action, where the State Highway Commission had moved in to construct improvements after the right-of-way had previously been condemned. In each case it was contended the improvement contemplated would restrict the access of the land-owner to the highway. The injunction action in *Franks* was converted to an inverse condemnation action for damages. In *Brock* the action was initially filed for damages in the nature of a suit on an implied contract. This was recognized to be the proper procedure to attack the action of the State Highway Commission, where the landowner claimed the commission had taken the right of access to a controlled access highway without obtaining the right of access by condemnation or otherwise.

The improvement contemplated by the State Highway Commission in *Brock* was the construction of a frontage or service road upon the right-of-way that it had already acquired by condemnation. The State Highway Commission had already proceeded under K. S. A. 68-1901, *et seq.,* to establish U. S. Highway 24 as a controlled access facility pursuant to standards adopted for the Interstate and Defense Highway System. Under the foregoing situation the court said in *Brock:*

"The appellants complain that they do not have direct access from their property to the highway. The property abuts on a frontage or service road. Appellants have access to the frontage road at all points at which it abuts their property. There is no suggestion that the frontage or service road is not of proper quality. It is part of the state highway system. Appellants are granted access to the main highway at the east and west ends of their property. Appellee has constructed cross-over openings for their special use and benefit. Such cross-over openings are only 575 feet apart."

❈ ❈ ❈ ❈ ❈

"We are forced to conclude that appellants were not denied access to the highway system since the frontage road itself is a part of the highway system to which appellants admittedly have access at all points at which it abuts their property. The frontage road in turn provides them access to the through-traffic lanes by points of connection between the frontage road and the through-traffic lanes of U. S. Highway 24. Access is not denied but traffic is regulated within the scope of the police power of the state acting through the State Highway Commission." (pp. 370, 371.)

Since the same situation was presented in the *Franks* case as in *Brock* the court was required in *Brock* to overrule the *Franks* decision. In *Atkinson* (overruled by Brock), upon which the appellant relies as being on all fours with the case at bar, the State Highway Commisison began improvements by constructing a strip of corner curbing and a traffic signal at the intersection abutting the land-owner's property. This was a busy intersection on U. S. Highway 69 and 75th Street in Johnson County, Kansas. The purpose was to regulate traffic and provide for the public safety under the regula-tory powers of the State Highway Commission. The improvements simply consisted of the construction of a curbing around the imme-diate corner where no curbing previously existed. Existing entrances to the service station were not affected. Therefore, on the facts in *Atkinson* and by reason of the court's decision in *Brock*, it was neces-sary to overrule *Atkinson*.

The instant case is readily distinguishable from *Atkinson* because this is a condemnation proceeding wherein the landowner's property is taken. The taking of the property and the improvement made thereon closed off an entrance and affected the access rights previ-ously enjoyed by the landowner to Highway 50. The improvement here did not involve the establishment of a frontage road or any action, insofar as the record discloses, under 68-1901, *et seq., supra.* The improvement made by the city in this case was not in any way intended to provide a frontage road or other means of access to the landowner's property.

In *Brock v. State Highway Commission,* supra, the court held the trial court should decide as a matter of law whether any property was taken. In the opinion the court said:

"The appellee contended that it had the right under the police power to limit or control appellants' access as it did. Whether or not a governmental agency has exceeded its police power and taken private property for public use is a question of law for the determination of the court under the existing facts and circumstances of the particular case. Not until the trial court deter-mines that private property has been taken for public use is the question of the amount of damages ripe for the determination of a jury.

"In all condemnation cases the only question presented for the jury's determination is the loss to the owner because of the property taken. The fact that there was a taking has been previously determined by the court." (p. 366.)

On the facts in the instant case the trial court properly determined that question at the pretrial conference as heretofore related.

The ruling of the trial court that the improvements in this case had the effect of denying reasonable access to the property previously enjoyed by the property owner, and that such loss of access was a compensable factor to be considered by the jury, finds support in the *Brock* decision. In the opinion the court said:

"Regardless of the source of origin there has developed a universal rule that the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. However, the rights of an abutting owner must be subordinated to the right of the public to the proper use of the highway and the right of governmental agencies to enforce proper police regulation. The right is subject to reasonable regulation and restrictions for the purpose of providing reasonable safe passage for the public, *but the regulations or limitations cannot be enforced where they unduly limit or unreasonably interfere with the rights of the abutting owners.* The established easement which has been used for access purposes cannot be taken without compensation, but, while the entire access may not be cut off, an owner is not entitled to access to his lands at all points in the boundary between it and the highway. If the owner has a free and convenient access to his property and to his improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has sustained no compensable loss." (pp. 367, 368.) (Emphasis added.)

On the facts in the instant case property rights were taken, including the right to access, and the court properly held the taking of the access to be compensable. Reasonableness is the test and the record is silent on this point. The facts show the market value, before and after, is based at least partially on the taking of access in the condemnation proceeding. No testimony of any kind, that this taking of access had anything to do with public safety or was in any way connected with the public safety, was presented to the trial court. This case involves the closing off of access with a curbing and the planting of grass, which formed an island between the highway and the landowner's adjacent property, where access previously existed.

The appellant next contends the trial court erred in admitting evidence of the number of gallons of gasoline sold at retail by the landowner.

John B. McCall, a stockholder and president of the appellee cor-

poration, testified that in determining the desirability, which in his opinion is synonymous with value, of a service station location the number of gallons of gasoline sold, or at least the gallonage potential, is "really everything". He identified an exhibit which showed the number of gallons of gasoline sold each month at the station from September 1971 to August 1972. The gallonage fluctuated from a high of 96,338 gallons in April 1972 to a low of 67,948 gallons in August 1972. In September of the same year, when the improvements were under construction, the gallonage was 47,247 gallons. In McCall's opinion the reduced sales resulted because of lack of access to the highway. His estimate of the value, before and after the taking, was based simply upon what he thought was going to be the potential loss of income.

In overruling the appellant's objection to McCall's testimony as to the value, for the reason that he considered future loss of income, the trial court stated as a matter of law the productivity of the premises, both before and after the taking, was a proper factor to be considered.

It must be recognized that gallonage (number of gallons of gasoline sold) is a factor that is used by those concerned with the market value of a service station. At no place did McCall mention dollars and cents in relation to the gallonage figures used in connection with the service station cite. Expert witnesses testifying for the condemnor in this case acknowledged that they gave consideration to the productivity of the station in terms of gallonage sold.

This court has recognized in a condemnation action the income approach to the appraisal of land taken by condemnation is the best method for determining value, when it is a known factor and there are no other comparable sales available (*State Highway Commission v. Lee*, 207 Kan. 284, 485 P. 2d 310).

We cannot say on the record here presented the trial court erred in admitting evidence of the number of gallons of gasoline sold at retail by the landowner.

The appellant contends the trial court erred in not striking the testimony of John B. McCall as to the value of the tract after the taking, because it was established that his testimony was based upon noncompensable items and his credibility was otherwise destroyed.

It has been held that the responsibility of defining the extent of compensable rights is within the courts, and that if it is established that the value testimony was based upon noncompensable items

or that the credibility of the testimony of the witness is otherwise destroyed, the testimony should be stricken in response to a proper motion (*Morgan v. City of Overland Park,* 207 Kan. 188, 483 P. 2d 1079).

The appellant contends John B. McCall took into consideration damages resulting from the installation of medial strips or raised curbed barriers in the center of Highway 50 in determining his after value of the property. McCall testified that prior to the taking cars approaching from the west had two choices as to getting in and out of the station; that they could either turn left at the intersection of Foster Street, proceed to the gas pumps and turn out on the east approach to Highway 50 or they could turn on the west approach on Highway 50 at or near the Foster Street intersection to the gas pumps and then out at the same exit; that after the taking, they get in and out of the station from the west by turning onto Foster Street, pulling into the station and making a u-turn and going back out onto Foster Street; that they can only go west and must turn and come back the way they came.

It is argued, in effect the witness was testifying that while he did not consider the medials themselves, he considered the effect of the medials on the traffic movement.

McCall was president of the McCall Service Station, Inc., (appellee) and as such must be regarded as the owner of the property in question. It has been held that a landowner is a competent witness in a condemnation action to testify as to the value of his property (*State Highway Commission v. Lee,* supra).

McCall testified to a good many things other than the effect the medial strip might have on the value of his property. The trial court instructed the jury "that the landowner is not entitled to compensation for damages, if any, resulting from the regulation of traffic through prohibiting cross over between separate traffic lanes or construction of medial dividers."

That the jury fully understood the foregoing instruction is indicated by a question submitted to the court after deliberations began. The question reads:

"Can we consider the enlarged green island now extending to the corner of Foster and 63rd in the award of damages to McCalls or shall it be considered in the same light as the medial strip and disregarded."

The green island referred to in the jury's question is not the medial strip between the traffic lanes on Highway 50, but is the

enlarged island between the McCall service station and the highway.

The jury, obviously, did not give full credence to the value testimony of McCall. McCall testified he was damaged $150,000 by the taking in this case, whereas the jury returned an award of $60,000 for the damages sustained by the taking.

When the totality of McCall's testimony is taken into consideration, the proper rule to be applied is: That once a witness has qualified as an expert land appraisal witness in a condemnation action, the court cannot regulate the factors he uses or the mental process by which he arrives at his conclusion. These matters can only be challenged by cross-examination testing the witness' credibility. (*State Highway Commission v. Lee,* supra.) The trial court properly applied the foregoing rule on the evidence presented in this case, when it refused to strike the testimony of McCall.

The appellant also challenges the ruling of the trial court concerning the testimony of Kenneth Martin, which the trial court refused to strike.

The appellant argues that the expert witness Martin considered damages to the view of the premises resulting from the construction of medial strips; that he considered damages resulting from the change of access rights as a result of the medial strips; and that he considered the taking of a tract of a permanent street right-of-way, which tract was not, in fact, taken.

The temporary construction easement described in the condemnation petition has been discussed. The trial court construed such easement to be a "permanent construction easement." It was, therefore, proper for the witness to take this into consideration. As to the consideration the witness gave the medial strips in this case, his testimony was subjected to cross-examination. Taking the totality of the witness' testimony into consideration, the trial court applied the proper rule, above stated, by refusing to strike the witness' testimony.

The appellant contends the trial court erred in refusing to permit the expert witness Robert Flatt, who had appraised the property as a court appointed appraiser, to testify that he was not employed by the city to make an appraisal and that the appraisal he made was not at the request of the city or the landowner.

This was merely an attempt, the trial court said, to bootleg into evidence the fact that the witness was a court appointed appraiser.

The appellant cites *City of Wichita v. Jennings,* 199 Kan. 621,

433 P. 2d 351 for the proposition that the new Code of Civil Procedure, which incorporated the Uniform Code of Evidence, was made applicable to the trial of condemnation actions, and therefore all exclusionary rules were wiped out and none were reinstated. It is argued from the foregoing decision that the exclusion of the testimony of a commissioner, or court appointed appraiser, in an eminent domain proceeding as to the amount of damages awarded *by the court appointed commissioners* was erroneous.

The testimony of Robert Flatt as to the value of the property in question was admissible and there was no objection to his testimony as an expert. His testimony was treated like any other expert's testimony by the trial court. This was an obvious attempt by the appellant to prejudice the jury by showing that Flatt was a court appointed appraiser in the original condemnation proceeding, and, as such, his testimony was entitled to more credence than that of other expert witnesses. The trial court properly sustained an objection excluding such testimony. The rule asserted by the appellant has no application to the situation here presented.

Lastly, the appellant contends the trial court erred in refusing to instruct the jury that the landowner was not entitled to compensation for damages, if any, resulting from curbs or other traffic control devices.

The appellant requested the trial court to instruct that the landowner is not entitled to compensation for damages, if any, resulting from the regulation of traffic through prohibiting left turns, prescribing one-way traffic, prohibiting cross over between separate traffic lanes, construction of medial dividers or barriers and installation of traffic control signals.

The appellant contends the instruction would have permitted it to argue that the damages, if any, resulting from the extension or enlargement of the green island were not compensable, if it was a means of regulating traffic.

While the foregoing requested instruction may have been proper in a given case, it has no application to the evidence presented at the trial in the instant case. There is no competent testimony in the record to show or even indicate that the closing of the west access entrance on Highway 50 was a means of regulating traffic. It must be conceded the city could regulate traffic, but no testimony was presented on this point and no testimony was presented as to its reasonableness. The only mention in the testimony was as to the median strips in the center of the highway, and the court instructed

the installation of the median strips and what effect they might have had on market value was not compensable.

Accordingly, the trial court properly refused to give the requested instruction of the appellant.

The landowner's appeal in this eminent domain proceeding was properly tried to the jury as one in which the landowner's property, including a common law right of access, was taken from him. The only question for the jury to determine was the amount of damages. (*Smith v. State Highway Commission,* 185 Kan. 445, 346 P. 2d 259.)

The judgment of the lower court is affirmed.