No. 43,490

In the Matter of the Condemnation of Land for Watershed Purposes. SARAH ROBERTS, HERBERT J. MADDOX, HETTIE REES, MARY JAMES and JANE RUSSELL, *Appellants*, v. UPPER VERDIGRIS WATERSHED JOINT DISTRICT No. 24, *Appellee*.

(392 P. 2d 914)

Opinion filed June 6, 1964.

*Jerry W. Hannah* and *Frank C. Sabatini,* both of Topeka, argued the cause, and *Clayton M. Davis* and *Mark L. Bennett,* both of Topeka, and *William J. Dick,* of Emporia, were with them on the briefs for the appellants.

*Elvin D. Perkins,* of Emporia, argued the cause, and *Everett E. Steerman,* of Emporia, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal challenging the procedure followed by the trial court in an appeal from a condemnation award.

The facts which present the procedural questions may be briefly stated.

The Upper Verdigris Watershed Joint District No. 24, Chase, Lyon, Greenwood, Woodson and Coffey Counties, Kansas, filed a petition, under G. S. 1949, 24-438, to condemn certain land of the plaintiffs, consisting of all portions of the landowners' land below 1320 feet mean sea level, which covered 60 acres. The land was taken for the permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained by the detention structure and for the operation of said waters and the inspection and maintenance of said area to be flooded.

The district court appointed three commissioners (24-438, *supra.*) who made an award of damages and filed their report with the county clerk (G. S. 1949, 24-439.)

The report, so far as material to this controversy, reads:

"That upon the 27th day of June, 1962, at 3:00 o'clock P. M. we met, pursuant to adjournment, and appraised the easements taken and assessed all other damages to the owners and lien-holders of said lands and property so taken and damages by reason of the condemnation of easements over and upon such property.

"That a full description of each easement taken, together with the appraised value of the same, and name of the owner or lien-holder of such property so far as known, and the amounts of other damages to the owner or lien-holder of each tract are as follows:

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"All of that portion of the North Half (N½) of Section Seven, (7), Township Twenty-one (21) South, Range Ten (10) East of the 6th P. M., Lyon County, Kansas, Lying below 1319.5 feet mean sea level;

"For the permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained by the detention structure to be located in the North Half (N½) of Section Eight (8), Township Twenty-one (21) South, Range Ten (10), and for the operation of said waters and the inspection and maintenance of said area to be flooded;  .  .  ."

The commissioners' award was in the amount of $1885.00, for the easement and damages. In conformity with G. S. 1961 Supp., 24-443, the landowners appealed to the district court from the amount of the award.

Prior to the trial in district court the parties stipulated that the landowners owned a 600 acre tract and that the 60 acres, which was being condemned, was located in the north half of the tract. The dam, which is referred to as the detention structure, was located on an adjoining tract.

The case was tried by a jury. The landowners presented their case on the basis of full use of a permanent easement covering the 60 acres and damages to the remaining acreage.

In its opening statement, and on cross-examination of the landowners' witnesses, the condemner attempted to inject into the case its theory of restricted use of the land condemned.

The trial court stated:

"The court has ruled. It is going to follow the language as set out in the petition [the same language as set out in the commissioners' report] so far as what is being taken is concerned. The court interprets it to mean, the approximate 60 acres as a permanent easement, for permanent and temporary detention of water on this 60-acre tract of land."

The witnesses for the landowners testified that prior to the taking, the land had a value of $70 to $80 per acre; that as a result of the taking of a permanent easement on 60 acres, the 60 acres would be a total loss, the damage ranging from $4,200 to $4,800 loss, and that the 540 acres remaining was damaged from $7 to $10 per acre, or the damage ranging from $3,780 to $5,600. The total damage ranging from $8,280 to $12,900.

After the landowners had rested their case the condemner attempted to present evidence as to its limited use and intended use of the condemned 60 acres. The following discussion occurred in Chambers:

"The Court: The right of the landowner to reserve the use of the surface of these 60 acres is subservient to this easement?

"Mr. Perkins: That's right.

"Mr. Sabatini: We take issue with the use at any time. They may well say today, or maybe only flood once every twenty-five years, have no limit to the taking. In other words, they are taking permanent use of the land once in every twenty-five years. You have taken above the permanent easement, the 60 acres, that is the right acquired and you have to pay for it.

"Mr. Perkins: It will always be permanent as far as the future right to use the particular property. Still permanent but restricted in nature and type of use.

"Mr. Sabatini: They may impound water in the 60 acres anytime.

"The Court: It still comes back to intent and right. In other words, the present intent is that only a portion of the 60 acres is going to be inundated but you have the right to inundate all of it."

After further argument the trial court reversed its position and stated:

"The court recognizes that a case should be tried on a single theory but under the circumstances it is not unreasonable that competent people would have divergent opinions concerning the affect (effect) of the taking of the easement on the market value of the land. Therefore, I am going to permit the witnesses considerable latitude in giving their opinions concerning damages. I am confident I can explain the situation to the jury in my instructions."

The condemner, over the objections of the landowners, introduced the structural plans and specifications of the dam as an exhibit and other evidence as to its intended limited use of the 60 acres being taken. A hydrologist was permitted to testify, based on rain studies, that only portions of the 60 acres would be completely flooded at certain times and at other times it would be completely flooded. On this theory, each of the expert witnesses for the condemner testified as to the amount of the damage to the 60 acres and the damage to the remainder. Each of the appraisers for the condemner testified that, based on the intended use as told to them by the condemner, they arrived at their opinion as to damages.

The condemner's appraisers valued the land, before the taking, at $70 to $80 per acre. One testified that the total damage was $1,200 based upon $20 per acre for the land taken and no damage to the remainder. Another testified that the total damage was $1,885 based upon information given by condemner that 44 acres would be flooded probably once in 50 years.

Each of the condemner's witnesses was permitted to base his opinion as to damage on the amount of use, or intended use, which use was based upon assumed rainfall.

At the close of the evidence the landowners requested the following instructions:

"In this case the Water Shed District has condemned and taken a permanent easement of 60 acres out of a 600 acre section owned by the Plaintiff landowner. You are to award the plaintiff landowners damages for the 60 acres actually taken, and damages of any to the remaining 540 acres resulting from such taking. In this regard you are instructed that the measure of damage

is based upon the rights acquired by the Water Shed District and not to be based upon the intended use of those acquired rights.

"You are instructed that the Water Shed District has taken a permanent easement of 60 acres out of a 600 acre section owned of the Plaintiffs. In this regard you are instructed the landowners are entitled to compensation based upon the highest or fullest use of the right acquired by the Water Shed District."

The trial court refused the requested instructions and over the objection of the landowners instructed the jury in part as follows:

"Members of the Jury, this case is somewhat different than the ordinary condemnation appeal. Plaintiffs and their witnesses testified that it was their opinion the market value of the 600 acre tract was depreciated to the extent of the full market value of the 60 acres over which the defendant now owns a permanent easement and in addition thereto that the plaintiffs were damaged by reason of the depreciation in the market value in the remaining 540 acres because of the taking of the easement.

"On the other hand defendant's witnesses testified that in their opinions the plaintiffs were not damaged to the full extent of the market value of the 60 acres because it was their opinion most of the land covered by the easement would be flooded infrequently and an owner or prospective purchaser would be aware of his right to use any part of this tract when not covered by water.

"You are instructed that you shold give consideration to all the evidence pertaining to damages in arriving at an amount which you think plaintiffs are entitled; and in this regard you may consider the frequency of the flooding of all or any part of the 60 acre tract and the fact that the defendant has the legal right to flood the entire tract at any time.

"You are further instructed that the owner of the fee title has the right to use any part of this tract as long as such use does not interfere with defendant exercising its right under the easement."

The jury returned a verdict in favor of the landowners which reads:

"Value of easement over 60 acres .......................... $2600.00
"Damage to the remaining 540 acres ........................ 700.00

"TOTAL VERDICT ....................... ................... $3300.00"

This appeal followed.

Although the landowners allege numerous trial errors as to the admission of evidence, the instructions and the presentation of the case to the jury on two theories for determination of damages the errors so alleged all hinge on the determination of a single question.

The question is—may the report of the commissioners as to the extent of the easement and the extent of its use be varied

by evidence as to an intended more limited use for the purpose of reducing the landowners' damages?

An examination of the particular statutes governing the involved condemnation proceeding will give us a positive answer.

The authority for watershed districts to condemn land is to be found in G. S. 1961 Supp., 24-1209, which reads in part:

"Each watershed district . . . . shall have the power: .

. . . . . . . . . . . . . . . . .

"*Eighth.* To acquire land and interests in land by gift, purchase, exchange or eminent domain; such power of eminent domain to be exercised within or without the boundaries of the district in like manner as provided by sections 24-438 to 24-446, both sections inclusive, of the General Statutes of 1949, or any amendments thereto, relating to the exercise of the power of eminent domain by certain drainage districts."

The sections of the statute to which the above quotation refers provided one of the numerous particular proceedings for condemnation before the enactment of Chapter 234 of the Laws of 1963. The special procedure was designed to compensate a railroad company where its right-of-way was being crossed by a levee, but also covered the taking of private land in connection therewith. The unusual provisions which were made to apply to watershed districts will be noted.

The commencement of the proceeding is provided by G. S. 1949, 24-438, which in part reads: .

". . . The board of directors, as soon as practicable thereafter, shall present a written application to the judge of the district court or of the court of common pleas of the county in which said land is situated, describing the land sought to be taken and setting forth that the appropriation thereof is necessary for the use of the district, and praying for the appointment of three commissioners to make appraisement and assessment of damages therefor. Upon the presentation of such petition by such board of directors or its attorneys, the judge to whom the same is presented shall forthwith appoint such commissioners. . . ."

The district court does not participate further in the proceedings. Notice to the landowners and the proceedings to be followed by the commissioners in appraising the land are covered by the provisions of G. S. 1949, 24-439, which also provides that all reports shall be filed with the county clerk.

Pertinent portions of G. S. 1949, 24-440 read:

"That said commissioners shall in their reports accurately describe the lands by them set off and appropriated, the purpose for which the same are taken, . . ."

G. S. 1949, 24-441, provides for the filing of a copy of the commissioners' report with the county treasurer by the county clerk and for receipts and disbursements.

The next section, G. S. 1949, 24-442, should determine the question now under consideration. It provides:

"That if such drainage district shall cause the copy of the report so certified to be within ten days after such certifying filed and recorded in the office of the register of deeds of such county, *the right to the perpetual use of all lands shown by such report to have been appropriated shall vest in such district for the purpose for which the same were condemned and taken as stated in such report*, . . ." (Emphasis supplied.)

The statute makes it crystal clear that the watershed district took the right to the full and perpetual use of all lands shown by the commissioners' report to have been appropriated and for the purpose for which the same were condemned as shown by the report.

The commissioners' report, and only their report, is evidence of the land appropriated, the extent of the easement and its use.

In *Mercantile Co. v. O. H. & G. Rld. Co.*, 56 Kan. 174, 42 Pac. 712, it is stated:

"A railroad company seeking to condemn land for a right of way or other uses connected with the construction and operation of its railroad, under the statute, takes only a right to the use of such land as is definitely described in the report of the commissioners. The concealed purposes or intentions of the representatives of the company or of the board of commissioners can confer no rights. The landowner may rely implicitly on the report filed. The commissioners in this case condemned a right of way across 20 acres only. The law requires the commissioners to embody their doings in a written report, and to file the same with county clerk. This report becomes the evidence, and the only evidence, of their doings. (*The State v. Armell*, 8 Kan. 288; *Reisner v. Union Depot & Rld. Co.*, 27 id. 382; *C. K. & W. Rld. Co. v. Grovier*, 41 id. 685.)" (pp. 175, 176.)

The above case was cited with approval in our recent case of *Sutton v. Frazier*, 183 Kan. 33, 325 P. 2d 338, where we said:

". . . Pursuant to the empowering statute Sunflower took the land definitely described in the report of appraisers for the uses specified in the notice. The report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendent. The landowners may rely implicitly on the report filed. This report becomes the evidence and the only evidence of the commissioners' doings. (*Mercantile Co. v. O. H. & G. Rld. Co.*, 56 Kan. 174, 42 Pac. 712; *State v. Armell*, 8 Kan. 288; and *C. K. & W. Rld. Co. v Grovier*, 41 Kan. 685, 21 Pac. 779.). . ." p. 45.)

The landowners and the condemner may, and must, rely on the language of the commissioners' report as to the extent of the

easement and the extent of the use. If the landowners are not compensated in full for the full use, as set out in the report, the condemner can take the full use in the future without further compensation to the landowners.

The evidence introduced on appeal from a condemnation award does not become a part of the commissioners' report which is filed with the register of deeds and determines the extent of the easement and the extent of the use. The injustice that would result to the landowners is readily apparent, if a condemner could introduce evidence as to a limited use for the purpose of reducing the amount of damages to the landowners, and later exercise the full use by virtue of the commissioners' report.

The extent of the easement and the extent of the use, that is the rights required, are not questions of fact. They are questions of law to be determined from the language used in the commissioners' report. The general rule is well stated in 7 A. L. R. 2d 366 as follows:

"Once it is ascertained in a particular situation that what is really involved is merely promissory, the courts are well agreed that an unaccepted promise, promissory statement or stipulation, or declaration of future intentions by a condemner as to what will be done or not done with respect to the property condemned, to that left untaken and to the rights of the landowner in relation thereto, cannot affect either the character or extent of the condemner's rights acquired or the amount of the damages it must pay as just compensation. A condemner cannot avail of what may aptly be termed a 'conditional' condemnation, but must take whatever rights are sought to be appropriated absolutely, paying in full therefor, regardless of future intentions; the rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation."

The condemner contends that it was entitled to show the nature of the detention structure which would cause the impoundment of water on the easement condemned, the purpose being to show only an infrequent or limited use of the easement. The fallacy of the contention is that the nature of the dam or detention structure was not made a part of the commissioners' report which controls the extent of the easement and the use.

It is suggested that watershed districts are a matter of public benefit and their construction will be rendered impracticable if damages must be paid in full for the value of land which is only infrequently and temporarily inundated. The suggestion has no merit. If the condemner desires only an infrequent limited use of the easement condemned it need only make certain that the limited

use is properly stated in the petition and incorporated in the commissioners' report which is filed with the register of deeds and governs the extent of the easement and the extent of the use. That has not been done in this case.

We must conclude that the trial court erroneously admitted evidence as to the condemner's future intended use which varied the extent of the use set out in the commissioners' report, *i. e.*, "For the permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained . . ."

It necessarily follows that the trial court erroneously admitted evidence as to damages to the landowners based on the evidence of the intended use, notwithstanding the fact that the commissioners' report, which controlled the extent of the use, gave the condemner the right to the full use of a permanent easement.

It also follows that the trial court's instructions erroneously left to the jury the determination of the extent of the use based on the condemner's evidence as to the intended use.

Moreover, we have little difficulty in concluding that the requested instructions of the landowners, heretofore quoted, properly stated the measure of damages.

The measure of damages should have been based on the rights acquired by the condemner and not upon testimony as to the intended use. The landowners were entitled to compensation based on the full use which the condemner had the right to exercise over the easement condemned as described in the commissioners' report.

On appeal from the commissioners' award the only matter to be litigated is the amount of damages. The trier of facts is not concerned with evidence as to the intended extent of the use. The extent of the use is to be determined from the language in the commissioners' report as a matter of law.

See, e. g., *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 318 p. 2d 1000, which states:

"In this connection, it is contended the court erred in permitting three witnesses for the company to testify, over objection, how much damage the owner had sustained by reason of the limitations placed upon his use of his property because of the condemnation of the fifty-foot right of way.

"We believe the court erred in permitting such testimony in the form and manner in which it was elicited. The true measure of damage in a case such as this is the value of the property actually taken, together with the diminution in value of that remaining, and is to be based upon the best and most advantageous use to which the property may be put (*Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636), and we fail to see the competency or materiality of the theory of limitation of use." (p. 158.)

Although what has been said up to this point is sufficient to require the granting of a new trial, the landowners raise another question which should receive attention. They contend that the trial court erred in permitting the case to be tried on two theories as to measure of damages and in submitting the case to the jury on the two theories. We are forced to agree with this contention.

The record shows that the trial court permitted the landowners to present their evidence on the theory of the full use of a permanent easement on the 60 acres. The landowners, on numerous occasions, objected to the condemner injecting the theory of limited use into the case. The trial court sustained the objections and in doing so made remarks before the jury such as:

"The court can't consider the reference made to a detention structure as . controlling this taking in any respect.

. . . . . . . . . . . . . .

"That is very true, you have elected to appropriate all land under a certain sea level elevation which comprises all the 60 acres.

. . . . . . . . . . . . .

It still comes back to intent and right. In other words, the present intent is that only a portion of the 60 acres is going to be inundated but you have the right to inundate all of it."

After the landowners rested their case the trial court switched the theory upon which damages were to be established. Notwithstanding the landowners' objections it permitted the condemner to submit evidence as to a limited use and permitted evidence of damages based on such limited use. It is clear that the case was submitted on two opposing theories as to the measure of damages. The remarks of the trial court in ruling on the objections in the presence of the jury must have confused it.

Based upon the numerous reasons stated in the opinion we are forced to conclude that the landowners did not receive a fair trial on the question of just compensation for the easement condemned.

Therefore, the judgment is reversed with directions to grant a new trial.

WERTZ and FATZER, JJ., dissenting.