(661 P.2d 806)
No. 53,692

GRANT BARCUS, LARRY G. BARCUS, ROY V. BARCUS and WILLIAM R. BARCUS, d/b/a L.G. BARCUS AND SONS, INC., *Appellants,* v. CITY OF KANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

Opinion filed April 7, 1983.

*George Maier, Jr.,* of Weeks, Thomas & Lysaught, Chartered, of Kansas City, for the appellants.

*Daniel B. Denk,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee.

Before SWINEHART, P.J., ABBOTT and MEYER, JJ.

SWINEHART, J.: This is an appeal by plaintiffs Grant Barcus, Larry G. Barcus, Roy V. Barcus and William R. Barcus, d/b/a L. G. Barcus and Sons, Inc., from an award in a condemnation action. The sole issue raised on appeal is whether the trial court erred in allowing defendant City of Kansas City to present evidence of damages based on a lesser use by the City of the easements acquired than that described in the appraiser's report and the petition of condemnation.

Plaintiffs are owners of some 976.60 acres of land in Wyandotte County, located on the south bank of the Missouri River. On July 15, 1977, defendant City of Kansas City filed a petition pursuant

to its power of eminent domain to acquire easements and other property rights and lands necessary for the construction of a segment of Highway I-435. Defendant acquired 48.22 acres of permanent easement for controlled access highway right-of-way, 22.28 acres of temporary easement for construction of a channel change, and 1.47 acres of temporary easement for highway construction.

Prior to the takings the land had been used for agricultural and recreational purposes. The property was the recipient of several watersheds and was bisected by a drainage slough (Conner Creek) which had been diked for many years before the takings. This drainage slough had the effect of severing the tract of land. The land was also partially encircled by an agricultural dike to protect it from flooding by the Missouri River.

Pursuant to K.S.A. 26-504, the District Court of Wyandotte County appointed three appraisers to determine the damages due to plaintiffs as a result of the takings. These appraisers were instructed to consider the various items set out by K.S.A. 26-513 in making their determination of damages. In their report, the court-appointed appraisers stated:

"8. This appraisal is made and based on plans and specifications furnished by the Right of Way Department of the City of Kansas City, Kansas."

The report had the same legal descriptions of the takings as was contained in the eminent domain petition. The court-appointed appraisers awarded plaintiffs $112,400 as damages for the takings.

Plaintiffs appealed from this appraisal. The condemnation appeal to the district court was pretried on January 16, 1980. At that time the takings described in the petition and appraisers' report were modified by stipulation. The 22.28 acre temporary easement for construction of channel change was modified to a permanent easement.

Plaintiffs contend that their property had been severed into three separate parcels by the takings. They alleged that the northern 62.07 acres had been severed by the relocation of Conner Creek and that there were 179.50 acres which were located south of the relocated creek and north of the I-435 right-of-way. The remaining 663.15 acres were south of the I-435 right-of-way. It is the middle 179.50 acres over which the dispute which precipitated this appeal arose.

The issue raised first at trial was whether access was reserved for plaintiffs across this easement area. Prior to the date of taking, this middle acreage was cut off from the southern portion of plaintiffs' property by the presence of the Conner Creek slough, except that it was accessible from the south by a small iron bridge which transversed the slough. Plaintiffs contended at trial that the presence of the I-435 right-of-way cut off access from the southern 663.15 acres of their land to the middle 179.50 acres. Defendant argued, however, that plaintiffs had access by a road built under the I-435 bridge across the right-of-way which connected plaintiffs' land. According to testimony, the plans and specifications upon which the court-appointed appraisers' report was based included an access road under the bridge piers south of the Missouri River across the right-of-way, and adjoining plaintiffs' property on either side of the easement for right-of-way purposes. The plans reportedly show no access to the highway itself, but merely access from one portion of plaintiffs' property to another portion. The plans further show fencing around the right-of-way easement to prohibit access to the highway itself, but no fencing across the easement in the area of the access road. Such a road had been constructed and was in use at the time of trial.

At trial, each side presented its own appraisers as witnesses concerning the question of damages. Plaintiffs' witnesses valued the property after taking by the City on the basis that no access was reserved to the landowners across the easement area, and also considered the best use of the land to be industrial. Defendant's witnesses valued the property based on the assumption that plaintiffs would have access across the highway right-of-way following the taking, and considered the best use of the land to be agricultural. Defendant's witnesses based their access conclusion on the plans for construction of the project which showed that an access road would connect the two portions of land. The appraisers arrived at the following damage estimates:

| Witness | | Value of entire property before taking. | Value of Remainder after taking. | Difference or Award |
|---|---|---|---|---|
| Larry Barcus | (Pl.) | $8,508,139 | $5,383,329 | $3,124,810 |
| Clay Roberts | (Pl.) | 6,380,000 | 4,415,000 | 1,965,000 |
| Rex Vickers | (Pl.) | 5,241,500 | 3,436,500 | 1,805,000 |
| Alan Austin | (Def.) | 1,243,000 | 1,121,000 | 122,000 |
| Jack Forbes | (Def.) | 1,270,750 | 1,141,750 | 129,000 |

Plaintiffs moved the trial court to strike. the valuation testimony offered by defendant's appraisers insofar as it was based upon the existence of an access road which created a limited use easement to which defendant was not restricted. Plaintiffs argued that the values arrived at were based upon project plans which were not incorporated into the petition of condemnation nor the report of the court-appointed appraisers. The trial court overruled the motion to strike.

The jury found the market value of the entire property and interest immediately before the takings to be $1,952,000. It then found the market value of the remaining property and interest immediately after the takings to be $1,746,000. Plaintiffs were therefore awarded $206,000. The trial court subtracted the $112,000 sum already awarded by the court-appointed appraisers and entered judgment in favor of plaintiffs against defendant for $94,000 plus interest.

Plaintiffs appeal, contending that the trial court erred. in denying their motion to strike the testimony of defendant's appraisal witnesses and allowing evidence concerning access to a portion of plaintiffs' property, when such access was not described in the petition of condemnation nor in the court-appointed appraisers' report. The effect of such testimony, plaintiffs maintain, is to allow the jury to base its damage award on a lesser use by defendant of the easement acquired than that described in the petition or the appraisers' report. Plaintiffs argue that the damage award must be based on what is actually taken, and not on what defendant plans to use at the present time. A review of the law on this issue reveals that plaintiffs' point is well taken.

In *Sutton v. Frazier,* 183 Kan. 33, 325 P.2d 338 (1958), the court dealt with an appeal from an eminent domain proceeding conducted by an improvement district to acquire tracts of land for the purpose of constructing and operating a sewage disposal plant. The issue presented was whether the improvement district acquired title to the minerals underlying the tracts of land which were taken by condemnation to provide means of ingress and egress to and from a sewage disposal plant and to provide a right-of-way for a sewer main to and from the plant. The court held that, under the facts of the case, no title to the minerals was obtained. The court held:

"In an eminent domain proceeding the report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment, and the landowners may rely implicitly on the report filed which becomes the evidence and the only evidence of the commissioners' doings." Syl. ¶ 8.

In *Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 334 P.2d 315 (1959), the court was presented with a case very similar to the case here on appeal. The Kansas Turnpike Authority acquired a portion of its right-of-way from the plaintiffs. The land taken included the plaintiffs' well, which was their only inexhaustible supply of water. Apparently, as a courtesy to the plaintiffs, the Turnpike moved its right-of-way fence 30 feet north of the south line of the right-of-way so what the well was outside the fence and accessible to the plaintiffs. The Turnpike did not, however, convey an easement to the plaintiffs or convey its right to the well, thus assuring the plaintiffs of a permanent water supply. Instead, the Turnpike retained its right to move its fence to the south line of the right-of-way at any time, cutting off access to the well. At the trial to determine the compensation for this taking, the plaintiffs maintained that the award should include the taking of the well, even though they had its use at the present time. The court agreed, stating:

"Plaintiffs contend the court erroneously permitted the defendant, in mitigation of the value of the land taken, to show their access to the well. During cross-examination and over plaintiffs' objection, Mr. Hoy was required to state whether the defendant had offered to return a triangle shaped tract of land on which the well was located. He answered that it had not, and he was further required to state that the defendant had moved the right of way fence back, thus permitting access to the well. Plaintiffs moved to strike that testimony for the reason the question to be determined was the value of the land taken, and until the defendant reconveyed the well it remained its property and plaintiffs' temporary access thereto was immaterial since the fence could be moved to the right of way line at any time in the future. In overruling the motion the court said, 'I think they (the Authority) have a right to show that he had access to it . . . the well is in the right-of-way and belongs to the Turnpike, he has full access to it and use of it.'

"The general rule of declarations and future intentions of a condemner as to what will be done with respect to property condemned is stated in an annotation in 7 A.L.R.2d, 366, as follows:

" 'Once it is ascertained in a particular situation that what is really involved is merely promissory, the courts are well agreed that an unaccepted promise, promissory statement or stipulation, or declaration of future intentions by a condemner as to what will be done or not done with respect to the property condemned, to that left untaken and to the rights of the landowner in relation

thereto, cannot affect either the character or extent of the condemner's rights acquired or the amount of the damages it must pay as just compensation. A condemner cannot avail of what may aptly be termed a "conditional" condemnation, but must take whatever rights are sought to be appropriated absolutely, paying in full therefor, regardless of future intentions; the rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation.'

"The defendant's conduct in moving the fence back was, in effect, an implied declaration of intention that plaintiffs would continue to have access to the well and enjoy the benefits of an inexhaustible supply of water for the operation of their farm. That conduct brought the defendant within the rule above stated, and the testimony objected to should have been withdrawn from the consideration of the jury. This conclusion finds support in *Glover v. State Highway Comm.* [147 Kan. 279, 77 P.2d 189 (1938)], where it was stated in the opinion that testimony offered in mitigation of damages to the effect that it was the policy of the highway commission not to cut trees on lands taken for highway purposes unless it was necessary to complete the work, and that it had given orders that the trees there involved should be left standing, was properly refused upon the ground that the commission had the right to cut the trees at any time in the future notwithstanding its declared intention to the contrary. In view of the foregoing, the court erred in failing to strike the testimony." pp. 75-77.

In *Roberts v. Upper Verdigris Watershed,* 193 Kan. 151, 157-59, 392 P.2d 914 (1964), the court stated much the same rule when confronted with a case which dealt with a question of the extent of use of an easement. The court stated:

"The commissioners' report, and only their report, is evidence of the land appropriated, the extent of the easement and its use.

"In *Mercantile Co. v. O. H. & G. Rld. Co.;* 56 Kan. 174, 42 Pac. 712, it is stated:

" 'A railroad company seeking to condemn land for a right of way or other uses connected with the construction and operation of its railroad, under the statute, takes only a right to the use of such land as is definitely described in the report of the commissioners. The concealed purposes or intentions of the representatives of the company or of the board of commissioners can confer no rights. The landowner may rely implicitly on the report filed. The commissioners in this case condemned a right of way across 20 acres only. The law requires the commissioners to embody their doings in a written report, and to file the same with county clerk. This report becomes the evidence, and the only evidence, of their doings. (*The State v. Armell,* 8 Kan. 288; *Reisner v. Union Depot & Rld. Co.,* 27 [Kan.] 382; *C. K. & W. Rld. Co. v. Grovier,* 41 [Kan.] 685.)' (pp. 175, 176.)

"The above case was cited with approval in our recent case of *Sutton v. Frazier,* 183 Kan. 33, 325 P.2d 338, where we said:

" '. . . Pursuant to the empowering statute Sunflower took the land definitely described in the report of appraisers for the uses specified in the notice. The report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment. The landowners may rely implictly on the report filed. This report becomes the evidence and the only evidence of the commissioners' doings. (*Mercantile Co. v. O.H. & G. Rld. Co.,* 56

Kan. 174, 42 Pac. 712; *State v. Armell*, 8 Kan. 288; and *C. K. & W. Rld. Co. v. Grovier*, 41 Kan. 685, 21 Pac. 779.) . . .' p. 45.

"The landowners and the condemner may, and must, rely on the language of the commissioners' report as to the extent of the easement and the extent of the use. *If the landowners are not compensated in full for the full use, as set out in the report, the condemner can take the full use in the future without further compensation to the landowners.*

"The evidence introduced on appeal from a condemnation award does not become a part of the commissioners' report which is filed with the register of deeds and determines the extent of the easement and the extent of the use. *The injustice that would result to the landowners is readily apparent, if a condemner could introduce evidence as to a limited use for the purpose of reducing the amount of damages to the landowners, and later exercise the full use by virtue of the commissioners' report.*

"The extent of the easement and the extent of the use, that is the rights required, are not questions of fact. They are questions of law to be determined from the language used in the commissioners' report. . . .

"The condemner contends that it was entitled to show the nature of the detention structure which would cause the impoundment of water on the easement condemned, the purpose being to show only an infrequent or limited use of the easement. The fallacy of the contention is that the nature of the dam or detention structure was not made a part of the commissioners' report which controls the extent of the easement and the use.

"It is suggested that watershed districts are a matter of public benefit and their construction will be rendered impracticable if damages must be paid in full for the value of land which is only infrequently and temporarily inundated. The suggestion has no merit. If the condemner desires only an infrequent limited use of the easement condemned it need only make certain that the limited use is properly stated in the petition and incorporated in the commissioners' report which is filed with the register of deeds and governs the extent of the easement and the extent of the use. That has not been done in this case.

"We must conclude that the trial court erroneously admitted evidence as to the condemner's future intended use which varied the extent of the use set out in the commissioners' report . . . ." (Emphasis supplied.)

The above rules were cited authoritatively in *Diefenbach v. State Highway Commission*, 195 Kan. 445, 448-49, 407 P.2d 228 (1965):

"The condemner cannot now contend before the jury that it intends only a limited use where the right taken is perpetual. In *Sutton v. Frazier*, 183 Kan. 33, 325 P.2d 338, we held:

" 'In an eminent domain proceeding the report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment, and the landowners may rely implicitly on the report filed which becomes the evidence and the only evidence of the commissioners' doings.' (Syl. 8.)

"The landowners are entitled to compensation based on the full use which the condemner has the right to exercise over the easement condemned as described

in the condemner's petition and considered by the appraisers. (*Roberts v. Upper Verdigris Watershed*, 193 Kan. 151, 392 P.2d 914.)"

See also *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 524-25, 455 P.2d 496 (1969).

The present case is similar to the above cited cases in that there has been a taking and the land taken has subsequently been used in a limited manner. Accordingly, it must first be determined whether there has been a reservation of an easement for plaintiffs to have the unlimited use and enjoyment of the land being used in a limited manner.

An examination of the condemnation petition in the present case reveals that there has not been an express reservation of an easement to plaintiffs for their access under the City's highway. The pertinent description states: "A *Permanent Easement* for controlled access highway right of way and removal of borrow material over and upon a tract of land in . . . ." (Emphasis supplied.) Although an access road had been provided, there is no indication whether the road is to be maintained or whether the City will continue to permit plaintiffs to use the road. The City would be within its rights to fence off the area completely at any time. Jack Forbes, one of the City's appraisers, gave his opinion as to the existence of the access:

"And in my opinion a prudent and typical investor, who is contemplating buying this land for farmland, or whatever you want to say he wants to buy it for, if he would look at the plans himself, if he had any qualms himself, or any reservations about access from one part to the other, he would contact the city or contact the Department of Transportation, which I have.

"And he would find out that there would be access under that bridge. And he would also find out if he needs it, *they will give him a legal instrument which it allows him to have any reservation or a permanent easement for ingress and egress.*

"And that's really the true test, in my opinion. And you have no reservations about the rights of access from one part of the land to the other." (Emphasis supplied.)

Forbes' testimony, based upon contact with the City or Department of Transportation, indicates that for total assurance, a legal instrument or permanent easement would need to be exchanged between the parties. This testimony clearly indicates that such a reservation of easement to plaintiffs does not already exist, even in light of the existence of the access road on the project plans.

The facts in this case can be compared to those in the *Hoy*

case, where the State had its easement fenced in such a manner as to allow access to a well. There the court noted that the State had not in fact offered to return the land to the owner. The placement of the fence was therefore considered a "conditional" condemnation, and its assurance that the landowners could use the well was merely promissory. The court concluded it was improper to consider evidence of the placement of the fence and the landowner's access thereto in the trial to determine damages for the taking.

We arrive at a similar conclusion in the present case. While the project plans apparently do provide for an access road and such a road has been constructed, the rights of plaintiffs to the continued use of the road have not been legally established. Therefore, we hold that it was improper for the jury to consider the existence of the road and the resulting access when determining plaintiffs' damages for the taking. The trial court erred by allowing such testimony.

Reversed and remanded for new trial.