(722 P.2d 1120)
No. 58,058

THE KANSAS POWER AND LIGHT COMPANY, *Plaintiff-Appellee*, v. CHARLES S. RITCHIE, d/b/a CHARLES S. RITCHIE OIL, *Defendant-Appellant.*

Opinion filed May 8, 1986.

*Spencer L. Depew*, of Depew and Gillen, of Wichita, for appellant.

*Galen E. Biery*, of Topeka, for appellee.

Before MEYER, P.J., CHARLES J. SELL, District Judge, assigned, and BARRY A. BENNINGTON, District Judge, assigned.

SELL, J.: The defendant, Charles S. Ritchie, d/b/a Charles S. Ritchie Oil, appeals a permanent injunction issued in favor of Kansas Power and Light Company (KP&L).

In 1980, KP&L obtained a permanent easement upon real estate owned by Harold and Mary Boren through eminent domain proceedings in Greenwood County, Kansas. In that proceeding, the appraisers' report provided in part:

"The appraisers further report that the rights to be acquired by the Plaintiff in this proceeding are limited to the following:

"1. The right to construct, maintain, alter, repair, operate, remove and reconstruct an electric substation and other appurtenances.

"2. Plaintiff shall have the right to fence the rights-of-way and *have the right of exclusive use of such rights-of-way.*" (Emphasis added.)

The report also showed the value of the property taken to be $16,500.00 before condemnation and -0- after condemnation.

Thereafter, and prior to November 7, 1984, KP&L constructed an electric substation on part of the property taken in the condemnation proceeding and fenced a part of the property. The substation itself was located within the fenced area but one or more guy wires extending from the substation were located on an unfenced portion of the property condemned.

In 1982, the Borens executed an oil and gas lease to Ritchie on a five-acre tract of land. The three-year lease included a part of the property acquired by KP&L in the condemnation proceeding.

On November 8, 1984, Ritchie entered upon the unfenced portion of the KP&L right-of-way and commenced drilling an oil and gas well. Before doing so, he did not check title to the property and he did not obtain KP&L's permission. Drilling was completed (but the well not tested) on November 14, 1984. On November 20, 1984, KP&L filed a petition for a restraining order and permanent injunction to prohibit Ritchie from re-entering the premises. KP&L alleged that it had acquired the exclusive right to use the surface of the property as a result of the 1980 condemnation proceeding. A temporary restraining order was issued that day. Ritchie's answer alleged that KP&L did not have the exclusive right to use the surface of the property, that KP&L did not acquire any mineral interests by virtue of the condemnation proceeding, and that his activities in no way interfered with KP&L's right to the property.

On February 5, 1985, a temporary injunction was ordered as the result of a hearing held on January 18, 1985. On February 21, 1985, a hearing was held for a permanent injunction. The court granted the permanent injunction ruling that (1) KP&L had acquired the right of exclusive use to the surface of the property by virtue of the condemnation proceeding; (2) KP&L's rights were in no way reduced because it had fenced part of the property; (3) KP&L had not acquired any mineral rights; and, (4) although the Borens retained the mineral rights, their lessee, Ritchie, was excluded from using the surface of the property to recover the underlying minerals, thereby rendering the mineral interest of questionable value.

The issue presented on appeal is: What rights did KP&L acquire to the Boren property by virtue of the 1980 eminent domain proceeding?

It is well established that "eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly so provides, either expressly or by necessary implication." *Sutton v. Frazier*, 183 Kan. 33, Syl. ¶ 3, 325 P.2d 338 (1958). K.S.A. 17-618, the statute which authorized KP&L's taking in the case at hand, does not provide for the acquisition of a fee simple interest; rather, the condemner acquires a permanent easement on the subject property. *Kansas Gas & Electric Co. v. Winn*, 227 Kan. 101, 104, 605 P.2d 125 (1980).

The appraisers' report must show what the condemner takes and what the landowner parts with. *Sutton v. Frazier*, 183 Kan. 33, Syl. ¶ 8; *Barcus v. City of Kansas City*, 8 Kan. App. 2d 506, Syl. ¶ 1, 661 P.2d 806 (1983). The report is the "only evidence of the extent of the easement taken and the extent of its use." *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, Syl. ¶ 4, 455 P.2d 496 (1969). Cf. *Barcus v. City of Kansas City*, 8 Kan. App. 2d at 511. The extent of the easement acquired and the extent of its use are determined "as a matter of law from the language used in the appraisers' report." *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, Syl. ¶ 5. Determining the extent and nature of the easement is paramount to understanding the rights retained by the property owner.

"In the case of a permanent easement the condemner has the paramount right to possession and use of all the land covered by the permanent easement for the purposes and uses set forth in the appraisers' report. The former proprietor of the soil retains fee title to the land and his rights extend to all purposes not incompatible with the rights of possession and use of the condemner." *Kansas Gas & Electric Co. v. Winn*, 227 Kan. 101, Syl. ¶ 3.

See also *Atchison, Topeka & Santa Fe Ry. Co. v. Humberg*, 9 Kan. App. 2d 205, 208-09, 675 P.2d 375 (1984).

Here, KP&L sought to acquire a permanent easement on the Boren property so it could "build, maintain, alter, repair, operate, remove and rebuild an electric substation for the transportation of electricity over and across certain land in Greenwood County, Kansas." The appraisers' report specially stated:

"The appraisers further report that the rights to be acquired by the Plaintiff in this proceeding are limited to the following:

"1. The right to construct, maintain, alter, repair, operate, remove and reconstruct an electric substation and other appurtenances.

"2. Plaintiff shall have the right to fence the rights-of-way and have the right of exclusive use of such rights-of-way."

Ritchie contends that pursuant to this report, KP&L did not acquire any mineral rights to the Boren property and that KP&L's right to exclusive use of the surface of the property is limited to the area fenced and actually used by KP&L. This construction of the appraisers' report would allow Ritchie to continue oil and gas exploration on the well site which is located on the condemned property but outside the fenced area.

The appraisers' report does not contain any language which would lead a reasonable person to believe that KP&L had acquired the mineral rights to the Boren property. Accord *Sutton v. Frazier*, 183 Kan. at 45. In fact, KP&L agrees that it did not acquire mineral rights to the Boren property by virtue of the condemnation proceeding. However, KP&L argues that since it acquired the right to exclusive use of all of the surface property condemned, it has the right to exclude all others from using the surface of the property for mineral exploration. This case then turns on the answers to two questions: (1) What is the extent of KP&L's right of exclusive use, and (2) what does the right of exclusive use encompass?

The district court ruled that KP&L had acquired both the right to fence and the right to exclusive use of the property's surface. This appears to be a correct interpretation of the appraisers' report. However, in support of his conclusion that KP&L acquired only the right of exclusive use to fenced property, Ritchie points to the specific language used in the appraisers' report: "2. Plaintiff shall have the right to fence the rights-of-way and have the right of exclusive use of *such* rights-of-way." (Emphasis added.) Ritchie argues that such "rights of way," to which the right of exclusive use applies, refers to "the rights-of-way which plaintiff has chosen to fence under its right to do so." Ritchie's contention is without merit.

The use of the word "such" refers to the last antecedent. Black's Law Dictionary 1284 (5th ed. 1979). Here, the previous "rights-of-way" were the same "rights-of-way" which had been discussed earlier in the appraisers' report, namely the rights-of-

way to the described Boren property. The preceding clause of the sentence in issue referred to the right to fence the rights-of-way. It did not alter the previously discussed rights-of-way. Adoption of the construction urged by Ritchie would merely require KP&L to put up a fence around the perimeter of the property in order to exclude Ritchie from the land.

Accordingly, KP&L acquired the right of exclusive use to the entire property acquired in the condemnation proceeding. However, the question remains as to what "exclusive use" encompasses.

"Exclusive" is defined as "[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vested in one person alone." Black's Law Dictionary 506 (5th ed. 1979). Applying this definition to the case at hand would prohibit the fee holder from using his property during KP&L's active use of the same; however, that was one of the factors considered by the appraisers in determining the amount KP&L would have to pay for the taking as evidenced by the value of the property before and after condemnation.

"The landowners are entitled to compensation based on the full use which the condemner has the right to exercise over the easement condemned as described in the commissioners' report." *Roberts v. Upper Verdigris Watershed,* 193 Kan. 151, Syl. ¶ 5, 392 P.2d 914 (1964).

"If the condemner desires only an infrequent limited use of the easement condemned [and thereby reduces the cost of acquiring the property] it need only make certain that the limited use is properly stated in the petition and incorporated in the commissioners' report which is filed with the register of deeds and governs the extent of the easement and the extent of the use." 193 Kan. at 158-59.

Ritchie asserts that a condemner's right to exclusive use of condemned property does not prohibit the fee holder from using the property as long as his use does not interfere with the condemner's use of the same. Ritchie apparently misreads *Midland Valley R. Co. v. Corn,* 21 F.2d 96 (D. Kan. 1927).

In *Midland,* the railroad acquired a right-of-way over private property in 1911. The grant did not contain any language which would entitle the railroad to exclusive use of the property; however, by judicial mandate, the railroad apparently was entitled to exclusive use of the property for railroad purposes. 21 F.2d at 98.

In 1927, the railroad attempted to enjoin the defendants from

drilling on part of the property which had never been used for railroad purposes. The court refused to issue the injunction noting the property had been abandoned by the railroad. 21 F.2d at 99. The court stated:

"The railroad company has a title to the lands conveyed for its right of ways for 'railroad purposes,' and *shall have the exclusive use and possession for such purposes.* Uses of the lands by the fee owner shall at all times be compatible with the uses for railroad purposes, and if the fee title owner attempts to use the lands for any purpose which conflicts or interferes with the use and possession of the railroad company for 'railroad purposes,' he should be prevented and halted in such attempts." (Emphasis added.) 21 F.2d at 98-99.

Contrary to Ritchie's contention, *Midland* appears to stand for the proposition that the railroad had the right to exclusive use of the property as long as it used the property for railroad purposes; however, since the railroad had abandoned that right, the fee holder was free to make use of his property.

Here, KP&L's right of exclusive use of the surface of the Boren property prohibited the Borens or their lessee from using the same. The fact that KP&L took quick action to remove Ritchie from the property indicates that KP&L had not abandoned its right. Further, KP&L's actual use of the property extended past the fenced area. Its guy wires, which ran to the substation, were outside the enclosed area.

We conclude that KP&L acquired the right to exclusive use of the surface of all of the condemned property as discussed above and that the district court's judgment granting KP&L's injunction should be affirmed. As in *Midland,* we hold that KP&L has the right to exclusive use of the property so long as it uses the property for the purposes set out in the condemnation proceeding.

We are mindful that "[t]he former proprietor of the soil retains fee title to the land and his rights extend to all purposes not incompatible with the rights of possession and use of the condemner." *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, Syl. ¶ 3. There may be circumstances where infrequent, occasional or casual entry upon property by the fee holder is permissible if not incompatible with the rights of possession and use by the condemner. This would ordinarily be a question of fact to be determined by the trial court. However, in this case under the facts presented, the trial court found that Ritchie was excluded from using the surface of the property to recover the underlying

minerals. Inherent in this finding is the proposition that Ritchie's use of the surface of the property was incompatible with KP&L's rights of possession and use and, therefore, should be prohibited by permanent injunction.

The decision of the trial court is affirmed.