JETCRAFT CORPORATION, a North Carolina corporation; Insurance Company of North America, a Pennsylvania corporation, Plaintiffs–Appellants,

Delta Commercial C. Por A., a foreign corporation; Transporte Aero, S.A., a foreign corporation, Plaintiffs,

v.

FLIGHT SAFETY INTERNATIONAL, a New York corporation; Wesley D. Kimball, an individual, Defendants–Appellees.

No. 92–3408.

United States Court of Appeals, Tenth Circuit.

Dec. 14, 1993.

Brandt R. Madsen and John Scott Hoff, Law Offices of John Scott Hoff, P.C., Chicago, Illinois, for Plaintiffs–Appellants.

John C. Nettels, Jr., Ronald P. Williams, and Matthew D. Flesher of Morrison & Hecker, Wichita, Kansas, for Defendants–Appellees.

Before ANDERSON and EBEL, Circuit Judges, and WINDER,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This diversity action arises from the crash of a Cessna Model CE–650 aircraft owned by plaintiff Jetcraft Corporation (Jetcraft) and insured by plaintiff Insurance Company of America (INA).[1] At the time of the crash, the dual-control aircraft was being used for a training flight conducted by defendant Wesley D. Kimball, an instructor for defendant Flight Safety International, Inc. (FSI). Kimball, as pilot in command, was providing transitional training on the CE–650 to four pilots employed by one of Jetcraft's purchasers. During a touch-and-go maneuver performed by one of the trainees, with Kimball operating the landing gear and flaps, the left

landing gear improperly retracted, causing the left wingtip to hit the ground. The aircraft veered off the runway and hit a light stanchion before coming to a stop.

Plaintiffs brought suit under various theories to recover extensive repair costs, lost prospective business advantage, interest, and other relief. Following inconclusive summary judgment proceedings, some of which are reported in *Jetcraft Corp. v. FlightSafety International, Inc.*, 781 F.Supp. 687 (D.Kan. 1991), the case was tried to the jury on a negligence claim. Plaintiffs appeal from the resulting judgment for defendants, asserting that the district court erred in refusing to submit their theory of bailment negligence to the jury and in excluding several items of evidence. We review the former ruling de novo, *Danner v. International Medical Mktg., Inc.*, 944 F.2d 791, 793 (10th Cir.1991), and the latter for an abuse of discretion, *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1011 (10th Cir.1992), and affirm for the reasons to follow.

**I**

The law of the forum state, Kansas, governs the substantive legal issues surrounding plaintiffs' bailment claim. *See Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir.1989). As bailees of the aircraft, defendants owed plaintiffs a duty of ordinary care and, therefore, are subject to liability for any damage occasioned by their negligence. *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, 675 P.2d 864, 868 (1984). More importantly, under a particular application of the res ipsa loquitur doctrine, plaintiffs were entitled to a rebuttable presumption of negligence if they established that their aircraft was under defendants' exclusive possession and control at the time of the accident. *See Nolan v. Auto Transporters*, 226 Kan. 176, 597 P.2d 614, 621 (1979); *Farm Bureau Mut. Ins. Co. v. Schmidt*, 201 Kan. 621, 443 P.2d 254, 257 (1968).

---

\* Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Accordingly, appellant's request for oral argument is denied, appellees' motion to have the request stricken is denied as moot, and the case is heard on the briefs.

The district court addressed this presumption at length on two occasions. Prior to trial, the parties filed cross-motions for partial summary judgment on the issue. The district court ruled in defendants' favor, holding the presumption inapplicable because plaintiffs could not establish the requisite exclusive possession and control. *See* App. Vol. I at 159–65, 170. On reconsideration just prior to trial, the district court briefly reiterated its doubts about this aspect of plaintiffs' case, but agreed to let them put on what evidence they had. *See* App.Vol. II at 243–45. The issue was engaged again at the close of plaintiffs' case-in-chief. This time the district court abandoned its focus on the conditions of exclusive possession and control and held instead that, even assuming the presumption were raised, it would necessarily be rebutted by defendants' evidence, particularly Kimball's consistent denial of any negligence with respect to the landing gear. *See id.* at 373–76. In the court's view, the presumption, which effects only a shift in the burden of production, simply dropped out of the analysis, and the burden of persuasion, always with plaintiffs, properly controlled the jury's deliberations as in any negligence action. *Id.* at 376; *see, e.g., Strange v. Price Auto & Serv. Co.*, 169 Kan. 98, 218 P.2d 208, 211, 215 (1950).

■ While, as noted, the underlying issues are governed by Kansas law, assessment of the evidence for purposes of a directed verdict is a matter of federal law. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984). Accordingly, we must determine whether the pertinent evidence, viewed in the light most favorable to plaintiffs, presented a dispute on the bailment issue sufficient to mandate submission to the jury or was so one-sided that defendants properly prevailed as a matter of law. *See Hinds v. General Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir.1993). In this regard, we may affirm the district court on either of its expressed rationales, or, indeed, on any legal basis established in the record. *See*

*Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988).

■ We agree with the reasoning initially expressed by the district court. Kimball, and through him FSI, did not have the exclusive possession and control necessary for application of the bailment presumption. At the time of the crash, there were two other pilots in the cockpit with Kimball, and one of them was flying the plane. Plaintiffs emphasize Kimball's role as pilot in command (PIC), which made him "directly responsible for, and … the final authority as to, the operation of [the] aircraft." 14 C.F.R. § 91.-3(a). However, we agree with the district court that ultimate authority and exclusive possession and control are not the same thing. Indeed, the PIC's final authority contemplates responsibility for the operative actions of others, i.e., the absence of *exclusive* possession and control.[2] We do not think the Kansas courts would disregard the actual participation of another pilot and ascribe exclusive possession and control of the aircraft to Kimball simply on the basis of his status as PIC. *See In re Rivers' Estate*, 175 Kan. 809, 267 P.2d 506, 508–09 (1954) (district court properly refused to attribute control, and consequent liability for crash, of dual-control aircraft to experienced, licensed pilot even though accompanied only by inexperienced, unlicensed passenger); *see also Walker v. Imperial Casualty & Indem. Co.*, 1 Kan.App.2d 349, 564 P.2d 588, 592 (1977) (citing numerous cases for proposition that "[a] student pilot taking flying lessons from a qualified instructor and logging time as a student pilot is *participating as an operator of the* aircraft") (emphasis added); *accord Udseth v. United States*, 530 F.2d 860, 861–62 (10th Cir.1976) (plaintiff could not satisfy exclusive-control requirement of res ipsa loquitur doctrine in plane crash case simply by showing defendant was pilot in command of dual-control aircraft).

Plaintiffs note that Kimball personally operated the landing gear at the time they failed. Plaintiffs also contend that possible

**2.** " 'Exclusive' is defined as '[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vest-

ed in one person alone.' " *Kansas Power & Light Co. v. Ritchie*, 11 Kan.App.2d 237, 722 P.2d 1120, 1124 (1986) (quoting *Black's Law Dictionary* 506 (5th ed. 1979)).

causes for this failure other than operator error were ruled out by evidence regarding the design, construction, and maintenance of the landing gear. Consequently, though the point is not made fully explicit, they appear to argue that even if Kimball did not have exclusive possession and control of the aircraft, his control over the particular component whose unexplained misfunction caused the accident nevertheless should have triggered the bailment presumption.

Plaintiffs do not cite any authority for this peculiar, piecemeal invocation of the bailment presumption. The pertinent case law recognizes the presumption when an item of property is entrusted to the exclusive care of a bailee and is returned damaged; it does not suggest recognition of potentially numerous sub-presumptions, one for each identifiable component of a damaged item, to bolster the case of a party who cannot prove the alleged bailee's exclusive possession and control of the item itself. Plaintiffs' action is based on the bailment not of a landing gear assembly that has somehow been damaged in handling, but of an aircraft that has been damaged in flight. In our view, the line of reasoning drawn in plaintiffs' briefs presents nothing more than a garden-variety, circumstantial argument for negligent operation of the aircraft's landing gear—which the jury evidently rejected—and does not implicate the principles established in the Kansas bailment cases.

## II

Plaintiffs challenge the exclusion of several items of evidence at trial. The district court deemed the documentation and testimony in question inadmissible primarily because of a lack of relevance and a potential for prejudice. Federal law governs these evidentiary issues. *See Romine v. Parman,* 831 F.2d 944, 944–45 (10th Cir.1987).

Plaintiffs sought to introduce evidence pertaining to FAA enforcement actions taken against defendants following the accident. Kimball was temporarily suspended for violating 14 C.F.R. § 61.57(c), which provides in pertinent part:

> No person may act as pilot in command ... of an aircraft certified for more than one required pilot flight crewmember, unless within the preceding 90 days, he has made three takeoffs and three landings as the sole manipulator of the flight controls in an aircraft of the same category and class and, if a type rating is required, of the same type.

However, the FAA actually found that "the takeoffs and landings were satisfactorily completed [on a flight simulator, pursuant to an exemption granted FSI] but were performed without any other Flight Safety personnel present to witness or conduct a proper review for certification." Supp.App. at 179 (FAA Memorandum of Informal Conference). Accordingly, the FAA dropped an alleged violation of 14 C.F.R. § 91.9 (1988) (now § 91.13(a)), for operating an aircraft "in a careless or reckless manner so as to endanger the life or property of another," stating that "on this occasion, non-compliance with the certification and record-keeping functions of the exemption alone did not endanger the lives or property of others." Supp.App. at 179. FSI, as Kimball's employer, received a notice of proposed civil penalty based on Kimball's infraction, and paid the $1,000 penalty without protest. FSI also placed Kimball on fifty-five days' administrative leave without pay for the incident.

The FAA's own characterization of the violation as a record-keeping omission undermines its relevance to the accident. Furthermore, we cannot gainsay the potential for prejudice or confusion carried by the spectre of any regulatory violation, however collateral to the defendant's alleged negligence. The district court did not abuse its discretion in weighing these factors and excluding evidence of the enforcement actions discussed above. *See* Fed.R.Evid. 401, 403. Likewise, the district court did not err in excluding the testimony of a former FAA employee, through which plaintiffs sought to challenge the FAA's application of the flight-simulation exemption to Kimball. Whatever the merit of this challenge, we agree with the district court that this collateral matter is far too remote to the controlling question of Kimball's negligence at the time of the accident to warrant submission to the jury.

■ Plaintiffs' objection to the exclusion of certain deposition testimony they submitted from the NTSB investigator is meritless. The testimony, concerning the extent to which the investigator's (inadmissible) opinion regarding responsibility for the accident relied on the contents of the (also inadmissible) NTSB report, clearly went beyond the bounds delimited by this court in *Thomas Brooks Chartered v. Burnett,* 920 F.2d 634, 639 (10th Cir.1990). Plaintiffs' concomitant complaint about the admission of the investigator's statement, for defendants, that it would be unusual for the landing gear indicator light to show green if the landing gear were not in fact down and locked, is equally meritless. With respect to the particular statement in question, *see* Brief of Appellants at 33, the cited portion of the record does not reflect any objection made by plaintiffs at the deposition or at trial, *see* App.Vol. II at 312, 320. Thus, either plaintiffs failed to object and give the district court a chance to rule on the issue now raised, in which case we deem it waived, *see Hinds,* 988 F.2d at 1046, or they have failed to include and reference the portion of the record wherein their objection and the district court's ruling thereon may be found, as required by 10th Cir.R. 10.3.2(a), 28.2(c), (d), in which case we leave the district court's determination undisturbed, *see McGinnis v. Gustafson,* 978 F.2d 1199, 1201 (10th Cir.1992). Furthermore, and in any event, the investigator's statement was innocuous—it merely reiterated the normal, intended operation of the landing gear indicator light.

■ Plaintiffs also challenge the exclusion of testimony from their "human factors" expert that, in his opinion, Kimball probably caused the accident by inadvertently retracting the landing gear. The district court ruled the testimony inadmissible because:

I have some misgivings about an after-the-fact opinion by a person such as this. I'm the first to agree if he is as qualified as they say, he could be a helpful witness to reconstruct and demonstrate to the jury how the plane functions and what is expected and how the handles are placed and when he's supposed to do what and things of that character.... But, seems to me,

to come in after the fact as in this case and to take into account contrary denials and, in the absence of any evidence from the plaintiff as to what he did, to opine that the event was the inadvertent retraction by Kimball is just professional speculation.... [I]t is really surmise after the fact and speculative as any other lay opinion could be as to what he might think happened. I'm going to strike the testimony of [the expert] as speculative and would not be helpful to the jury if he is asked to give an opinion as to what he thinks Mr. Kimball did or didn't do.

. . . .

... This isn't a reconstruction man who's trying to tell us that given what he observed here, this is what happened. This is a witness who says, "Given my experience here's what I opine happened," and that is speculative.

App.Vol. II at 232–34. In our view, the district court properly prohibited plaintiffs' expert from doing what the jury could do just as well on its own, i.e., infer the presence or absence of negligence from the circumstantial evidence adduced at trial. *See* Fed. R.Evid. 702 and advisory note.

■ Finally, plaintiffs contend the district court erred in excluding testimony regarding an antihistamine prescribed for a cold and sinus problem Kimball had five days before the accident. The district court refused to admit testimony concerning possible side effects of the medication, particularly drowsiness, absent evidence Kimball had actually taken the medication and/or exhibited some indication of its side effects on the day of the accident. *See* App.Vol. II at 354–58. Under the circumstances, we find no abuse of discretion in the assessment of probative value and prejudicial effect informing the district court's ruling on this evidence.

The judgment of the United States District Court for the District of Kansas is AFFIRMED. Appellees' motion to dismiss Jetcraft's appeal is denied.